J-A20004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| O.B. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| C.W.B. | : | | |
| | : | | |
| Appellant | : | No. 1677 WDA 2019 | |

Appeal from the Order Entered October 11, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-16-7751-008

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 08, 2020**

C.W.B. ("Father") appeals *pro se* from the October 11, 2019[1] order that, *inter alia*, found him in contempt of the 2017 order establishing the custody arrangement between Father and O.B. ("Mother") for their child J.B. (born in 2008).  We vacate the order holding Father in contempt and imposing sanctions, and remand for a new contempt hearing.

Father is a U.S. citizen who resides in Germany.  Mother, a citizen of Ukraine, resides in Pittsburgh, Pennsylvania, as a lawful permanent resident. The parties married in Ukraine in 2008.  The family resided in Ukraine and Ireland during the first three years of J.B.'s life.  In 2011, Mother and J.B. moved to Pittsburgh after Mother was accepted into a Ph.D. program there,

_____

[1] The order is dated October 10, 2019, but was not filed until October 11, 2019.  We have amended the caption accordingly.

while Father took a position in Germany.  Father joined Mother and J.B. in Pittsburgh in 2013, then the family relocated to Germany.  In 2015, Mother and J.B. returned to Pittsburgh.  Father has maintained that the parties had agreed to alternate custody, with J.B. attending school one year in Pittsburgh, then the next in Germany, and so on.  Mother disclaims reaching any such agreement.

In 2016, Mother filed a complaint for divorce and a complaint for custody.[2]  The court entered an interim order granting primary custody to Mother during the school year and to Father during summer break.  The orderly progression of the custody proceedings, in which Father was permitted to participate via telephone, was interrupted by Father's unsuccessful litigation in federal court of a claim for the return of J.B. to Germany pursuant to the Hague Convention.  Ultimately, a trial was conducted, and a final custody order entered on August 2, 2017.  Therein, the court awarded primary physical custody to Mother in Pittsburgh, with Father enjoying physical custody in Germany during the summer and holidays and the right to additional time in Pittsburgh if he chose to avail himself of it.  The parties shared legal custody but for regarding educational matters, for which Mother was awarded decision-making authority.  Father's appeal from the 2017 custody order

_____

[2] To date, the divorce proceeding remains pending.

resulted in no relief.[3]  *See O.B. v. C.W.B.*, 190 A.3d 731 (Pa.Super. 2018) (unpublished memorandum).

In 2018, Father moved to modify custody, and a trial was scheduled, however, it was superseded by a hearing on allegations of contempt against Father.[4]  Father also moved for the trial court to recuse itself in December 2018 and January 2019, but the trial court declined.  Father filed another motion to modify custody in January 2019, and a judicial custody conciliation was scheduled for September 26, 2019.  *See* Order, 6/27/19.  In the meantime, J.B. spent the summer of 2019 with Father in Germany pursuant to the terms of the 2017 custody order.

J.B. was to return to Pittsburgh on August 19, 2019, one week before school began.  Instead, Father enrolled J.B. in school in Germany and refused to allow him to go back to Pittsburgh.  On August 22, 2019, Mother presented

---

[3] One of the issues this Court found meritless was Father's contention that the trial court's decision was the product of bias and ill-will towards him.  *See O.B. v. C.W.B.*, 190 A.3d 731 (Pa.Super. 2018) (unpublished memorandum at 13, 27-28).  He has repeatedly sought the trial court's recusal since then, with the denial of recusal being the subject of at least some of the four other appeals Father has filed in addition to the instant appeal.  Each of those was quashed or dismissed.  *See O.B. v. C.W.B.*, 49 WDA 2019 (dismissed due to Father's failure to pay for transcripts); *O.B. v. C.W.B.*, 878 WDA 2019 (quashed as interlocutory); *O.B. v. C.W.B.*, 190 WDA 2020 (dismissed based upon Father's failure to file a docketing statement); *O.B. v. C.W.B.*, 552 WDA 2020 (quashed as taken from an unappealable order).

[4] Father separately filed a motion for "cancellation/dismissal/continuation" of his requested modification trial.  Motion for Continuance or Dismissal, 9/13/18, at 3.

a motion for contempt and for immediate return of J.B. Father participated in the motion hearing via telephone and indicated that J.B. refused to go back to Pittsburgh. *See* N.T., 8/22/19, at 3. The trial court advised Father that it was his legal responsibility to comply with the controlling custody order, and that it would schedule a hearing on the contempt petition. *Id*. at 3-4.

In accordance with its intentions stated at the hearing, the trial court entered orders on August 29, 2019, (1) requiring Father to immediately send J.B. back to Pittsburgh via airplane as he had in the past, and (2) scheduling a hearing on the contempt allegations for October 20, 2019. "The scheduling order [wa]s docketed at Document 170 on the trial court docket and was emailed to Father, the notification method he requested be implemented and which has been used throughout the pendency of this case." Trial Court Opinion, 2/24/20, at 2. *See also* Order, 8/29/19. The order further specified that "Father may arrange to testify by telephone as he has before." *Id*. The custody conciliation scheduled for September 26, 2019, in connection with Father's 2019 modification motion did not take place while J.B. remained in Germany.

Father did not appear at the October 10, 2019 contempt hearing by telephone or in person. The trial court proceeded without him. The following day, the order at issue was entered, indicating that Father was in contempt of the 2017 custody order by failing to return J.B. on August 19, 2019, and also for unilaterally enrolling J.B. in school in Germany when Mother has full legal

authority on educational matters, and awarding Mother counsel fees. **See** Order, 10/11/19, at ¶¶ 2-5. The order further provided that the court would schedule a hearing on custody modification "upon praecipe of either party when the child is returned to Pittsburgh." *Id*. at ¶ 7.

Father filed a timely notice of appeal from the October 11, 2019 contempt order, along with a statement of errors complained of on appeal. Father filed a motion in the trial court nearly two weeks later,[5] asking the trial court to vacate its October 11, 2019 order because he did not receive notice of the contempt hearing, and seeking the trial court's recusal. **See** Motion to Vacate, 11/20/19, at 3-4. The trial court denied the motion by order indicating that Father in fact received email notice and nonetheless failed to appear for the contempt hearing. **See** Order, 11/20/19.

Father states the following questions for our review, which we have re-ordered for ease of disposition:

A. Did the family court abuse its discretion, make an error of law, and/or breach due process rights and/or equal protection rights in refusing to timely calendar a custody modification trial?

B. Did the family court abuse its discretion, make an error of law, and/or breach due process and/or equal protection rights in refusing to appoint a guardian *ad litem*?

---

[5] Father's motion was dated October 27, 2019, and contains a notice of presentation for November 19, 2020.

C.      Did the family court abuse its discretion, make an error of law, and/or breach due process rights and/or equal protection rights in determining me to be in contempt?

D.      Did the family court abuse its discretion and/or make an error of law in determining that [Father] willfully breached the custody order?

E.      Did the family court abuse its discretion, err as a matter of law, and/or breach due process and/or equal protection rights . . . by failing to recuse itself?

F.      Did the family court abuse its discretion, err as a matter of law, and/or breach due process rights and/or equal protection rights by failing to have a record hearing on recusal?

G.      Would a common law reasonable person be satisfied that the judicial authorities, provided by Commonwealth for determining a custody dispute involving a non-locally resident party, lack an appearance of bias?

Father's brief at 10-11 (references to Pa.R.A.P. 1925(b) statement omitted).

Father's first two issues implicate the underlying custody litigation rather than the contempt order.  Specifically, Father claims that the trial court erred in failing to schedule a timely custody modification trial.  Father contends that he had "repeatedly asked for a trial calendared that would give a decision in good time for the upcoming academic year and these requests have been repeatedly denied."  Father's brief at 35 (footnote omitted).  Father also questions whether the trial court "abuse[d] its discretion, ma[d]e an error of law, and/or breach[ed] due process and/or equal protection rights in refusing to appoint a guardian *ad litem*."  **Id**.  Father's argument speaks of J.B.'s

custody preference and the trial court's indication at a 2018 hearing that Father had been engaging in parental alienation. *Id*. at 40-45.

We fail to see how these contentions relate to Father's failure to abide by the terms of the existing custody order and the trial court's decision to hold him in contempt as a result of that failure. A contempt proceeding is collateral to the underlying custody dispute, and an appeal from an order finding contempt and imposing sanctions does not give this Court jurisdiction over other issues unrelated to the contempt. *See*, *e.g.*, *V.C. v. L.P.*, 179 A.3d 95, 97 (Pa.Super. 2018) (exercising jurisdiction to review challenge to contempt order but quashing all other portions of the appeal). Consequently, Father's claims regarding the scheduling of a hearing on custody modification and the denial of his requests for the appointment of a guardian *ad litem* for J.B. are not properly before us.[6]

---

[6] We note that the Rules of Civil procedure provide that a trial court **may** appoint a guardian *ad litem* to represent the best interests of a child in a custody action. *See* Pa.R.C.P. No. 1915.11-2(a). Contrary to Father's contention that the guardian *ad litem* would represent J.B.'s legal and best interests, Rule 1915.11-2 expressly indicates that the guardian *ad litem* "shall not act as the child's counsel or represent the child's legal interests." Pa.R.C.P. No. 1915.11-2(a). Further, the appointment is only to be made if the trial court finds "that the appointment is necessary to assist the court in determining the best interests of the child." *Id*. While Father may argue that the circumstances are such that the appointment of a guardian *ad litem* is necessary for deciding any future modification of custody, Father's arguments have no bearing on the propriety of the trial court's contempt order.

Father's next two questions do concern the trial court's October 11, 2019 order finding him in contempt. Our standard of review pertinent to these questions is as follows:

> On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings.

*Thomas v. Thomas*, 194 A.3d 220, 225 (Pa.Super. 2018) (cleaned up).

Our Legislature has enacted the following provisions concerning the refusal of a party to comply with a custody order:

**(g) Contempt for noncompliance with any custody order**.—

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S. § 5323(g).

We have indicated that the following elements must be proven to sustain a finding of contempt: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa.Super. 2013) (internal quotation marks omitted). Only willful noncompliance, not "a mere showing of noncompliance" is necessary, and the burden of proof rests upon the complaining party. ***Id***. Additionally, "[t]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." ***In re Contempt of Cullen***, 849 A.2d 1207, 1211 (Pa.Super. 2004).

The trial court offered the following statement of its reasons for finding Father in contempt:

> Father claims it was error to find him in contempt without determining that any part of the custody order was "willfully breached" by Father. The custody order required Father to return [J.B.] at the end of the summer custody exercised in Germany, one week prior to the start of [the] school year. Father did not return the child. Nor did he attempt to return the child. Instead, he enrolled him in school in Germany - clearly a willful act. The enrollment did not happen on its own. By enrolling [J.B.] in school in Germany, Father demonstrated that he was not attempting to comply with the order.

> Under these circumstances, there is simply no explanation Father could possibly give that would demonstrate that his failure to return [J.B.] was anything but willful. Returning the child somewhat late might have been explained by a missed flight or other unavoidable incident, but to not only fail to return [J.B.] but, instead, enroll him in school in Germany cannot be explained in any other way but that it was willful. Enrolling him in school makes it clear that there is no intent on Father's part to follow the 2017 custody order which is in full force and effect.

- 9 -

Trial Court Opinion, 2/24/20, at 4 (unnecessary capitalization omitted).

Father challenges this contempt finding on two fronts. First, he claims that the trial court erred in even conducting the hearing on Mother's contempt motion when he did not receive notice of it and thus did not have the opportunity to be heard. *See* Father's brief at 25-26. He maintains that he knew to participate in the presentation of Mother's motion for contempt because she noticed it through Our Family Wizard, not through email. He asserts that, assuming that he generally consented to email notice of court filings, he never agreed "that the family court can declare me to have **received** notice by an unsupported assertion that they **sent** me an email." *Id*. at 27 (emphasis in original). He avows: "I did not waive the right to be formally notified of any proceedings which might arise due to transmission error, a hack, or a typographical error of my email address." *Id*. at 27-28. He notes the lack of any return receipt or other evidence in the record indicating that the email was sent to the correct address. *Id*. at 28. Additionally, Father notes that the scheduling order itself apprised him of neither the hearing room or telephone number to call, nor the fact that J.B.'s enrollment in school in Germany, a fact not alleged in Mother's motion, would be at issue to allow him to prepare his defense. *Id*. at 26, 29.

Furthermore, Father contends that the trial court improperly found that he was in contempt. He observes that the trial court had no basis to conclude that Father made no attempt to return J.B., and simply presumed that there

could be no explanation for J.B.'s school enrollment other than willful noncompliance with the order.[7] *See* Father's brief at 31-32. Indeed, he argues that there is no record to support any of the trial court's conclusions as to the elements of contempt. *Id*.

The trial court addressed the issue of notice as follows:

> Father first asserts . . . that he was not provided notice of the hearing and that it was improper for me to conduct the hearing without his involvement. The record and the recollection of my and court staff belies this assertion. Father was provided notice by email, a method of service which was implemented at his request. Notice was provided to Father in the same manner as all previous hearings.

> The October 10, 2019 hearing proceeded without Father's involvement after awaiting his call into the courtroom. This was not error. Father had proper notice and the opportunity to be heard; he did not attend.

Trial Court Opinion, 2/24/20, at 4.

Our review of the record and the applicable law leads us to conclude that the trial court's contempt finding cannot stand. First, Father is correct that there is no evidence of record to support the substantive finding of contempt. There is no transcript of the October 10, 2019 contempt hearing in the certified record, despite Father's request, because none is available due to "[a] malfunction or some other administrative error[.]" Order, 7/1/20. The

---

[7] Father claims that, had he been given notice, he could have demonstrated that the enrollment was mandated in Germany, and that he had documentary evidence indicating Mother's consent to the enrollment. *See* Father's brief at 32 n.6.

- 11 -

trial court's opinion further suggests that its findings were not based upon evidence offered at the hearing, but upon assumptions that are not irrational, but need not necessarily be true. As it stands, the record supports only a finding that Father is guilty of noncompliance, not the willful noncompliance necessary to support contempt.

Second, while Pa.R.C.P. 236(d) permits the prothonotary to effectuate notice via electronic means upon the written request of a party, when the prothonotary fails to note such service on the docket, the order has not been properly served. *See* Pa.R.A.P. 236(d). Such a breakdown in court processes tolls even the jurisdictional requirements of a timely appeal. *See*, *e.g.*, *M.L.S. v. T.H.-S.*, 195 A.3d 265, 267 (Pa.Super. 2018). The docket entry for the trial court's August 29, 2019 order scheduling the contempt hearing and advising Father to arrange to testify by telephone contains no indication of service upon Father by email or otherwise.

Given these defects as to notice, the sufficiency of the evidence, and the completeness of the record, we deem it most appropriate to vacate the portions of the October 11, 2019 order finding Father in contempt of the 2017 custody order and imposing sanctions for the noncompliance. We remand for the trial court to schedule a new contempt hearing, giving appropriate notice, and allowing Father the opportunity to be heard on the substance of the allegations.

In his remaining questions, Father claims the trial court erred or abused its discretion in denying his motions for recusal and a hearing on recusal.[8] The following principles guide our review:

> We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

*In re A.D.*, 93 A.3d 888, 892 (Pa.Super. 2014) (cleaned up).

> A party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her. Recusal is required wherever there is substantial doubt as to the jurist's ability to preside impartially. Further, because the integrity of the judiciary is compromised by the appearance of impropriety, a jurist's recusal is necessary where the judge's behavior appears to be biased or prejudicial.

_____

[8] Father also suggests that the Pennsylvania Superior Court, and all elected judges in this Commonwealth, should recuse themselves from considering his case because there is an appearance of bias. *See* Father's brief at 53. Specifically, Father contends that there is an obvious incentive for Pennsylvania judges to favor local litigants who may vote for them over people like him who are not eligible to vote in the judicial elections. *Id*. at 54-55.

Father has waived his right to assert this basis for recusal. Our Supreme Court has plainly stated that "the law is clear. In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse." *Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017). Father could have asserted the fact that Pennsylvania judges are elected as a basis for recusal before the first judge issued an order in this case in 2016, and could have sought to disqualify this Court in his first appeal in 2017.

> However, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Bowman v. Rand Spear & Associates, P.C.*, 234 A.3d 848, 862-63 (Pa.Super. 2020) (cleaned up).

The trial court declined to address Father's recusal issues in its Pa.R.A.P. 1925(a) opinion, indicating that they were not implicated in contempt hearing at issue in this appeal. The court explained: "I refused Father's request for my recusal in December of 2018, and January and May of 2019. Father already appealed from my denial of his recusal motion at 878 WDA 2019. That appeal was quashed as interlocutory." Trial Court Opinion, 2/24/20, at 1 n.1.

Father's notice of appeal specifically indicated that, in addition to the October 11, 2019 final order finding him in contempt, he was also challenging the December 27, 2018, and January 14, 2019 orders denying his recusal motions, as well as the May 14, 2019 order declining to hold a hearing on his recusal request. *See* Notice of Appeal, 11/9/19, at 3.

Our precedent generally provides that an interlocutory order denying recusal becomes reviewable upon the entry of a final, appealable order. *See*, *e.g.*, *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 149 (Pa.Super. 2010). However, as noted above, contempt proceedings are ancillary to the underlying custody litigation, and the entry of an appealable contempt order

does not grant this Court jurisdiction over all prior interlocutory orders. *See* *V.C. v. L.P.*, *supra* at 97.

Father filed no recusal motion in connection with the contempt proceedings at issue in this appeal before the trial court entered its contempt order. Rather, he requested recusal in the motion to vacate which he presented after he had already filed a notice of appeal from that order. *See* Motion to Vacate, 11/20/19, at 3-4. Hence, the trial court's denial of recusal in connection with the October 11, 2019 contempt order is not properly before us in this appeal. However, since we have determined that remand for a new contempt hearing is necessitated based upon our resolution of Father's other issues, Father will have the opportunity to seek appellate review of the trial court's denial of his contempt-related November 2019 recusal request should he find himself aggrieved by the new appealable order which will follow our remand.[9]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

_____

[9] Even if the recusal issue were properly before us, we have no opinion from the trial court to allow us to determine whether the denial was an abuse of discretion. Given our remand for a new contempt hearing based upon Father's other challenges, we would deem it most efficient to forgo retaining jurisdiction for the trial court to prepare a Pa.R.A. P. 1925(a) opinion, and instead indicate that our denial of relief on the recusal issue was without prejudice for him to raise it again if he were to appeal the result of the new hearing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2020