J-S82026-17

2018 PA Super 64

| | | |
|---|---|---|
| BEVERLY L. CUNNINGHAM, INDIVIDUALLY AND AS TRUST BENEFICIARY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| ALVIN D. CUNNINGHAM, INDIVIDUALLY, ALVIN D. CUNNINGHAM AS TRUSTEE, AND ALVIN D. CUNNINGHAM TRUST | : : : : : : | No. 604 WDA 2017 |
| Appellant | : | |

Appeal from the Order March 20, 2017
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  No. 68 Civil 2007

BEFORE:   BENDER, P.J.E., STEVENS*, P.J.E., and STRASSBURGER**, J.

OPINION BY STEVENS, P.J.E.:                    **FILED MARCH 20, 2018**

Appellant/Defendant Alvin D. Cunningham, in his individual capacity, appeals from the order entered in the Court of Common Pleas of Somerset County on March 20, 2017, finding him in civil contempt for violating a prior court order directing him to make monthly payments to his ex-wife, Appellee/Plaintiff Beverly L. Cunningham, pursuant to the parties' Family Trust Agreement as incorporated in their Post Nuptial Agreement. Appellant contends the remedy of contempt was unavailable where the underlying Trust Agreement was never incorporated into the parties' decree of divorce but was, instead, an independent contract such that Appellees' sole remedy for Appellant's nonpayment under the agreement was a breach of contract claim.

_____
*   Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

In the alternative, Appellant argues that even if the court could properly enforce its prior order through the sanction of civil contempt, the evidence established, *inter alia*, Appellant's present inability to pay, the depletion of trust funds through legitimate stock market losses, and his good-faith willingness to convey his one-half of the marital home to Appellee as payment of the court's purging condition.  We affirm.

The trial court's Pa.R.A.P. 1925(a) opinion aptly sets forth the relevant factual and procedural history:

> Beverly J. Cunningham [Appellee] filed a Complaint against Alvin D. Cunningham [Appellant] on January 25, 2007.  In the Complaint, Appellee aver[red] that the parties were formerly husband and wife and that the parties were divorced at case docketed at 16 Divorce 1997 in the Court of Common Pleas of Somerset County.  Compl. ¶ 3.
>
> Appellee further aver[red] that in connection with the divorce action, the parties entered into a Post Nuptial Agreement, together with a Family Trust Agreement (hereinafter collectively referred to as "Agreements"), dated November 1, 1996, which were not incorporated into the Divorce Decree.  *Id*. at ¶¶ 4, 5. Appellee aver[red] that the Appellant had violated the terms of the Agreements, and that the Post Nuptial Agreement was not properly entered into as the Appellant failed to make a full disclosure of his assets in connection with the same.  *Id*. at ¶ 6.
>
> [Appellant filed an Answer, New Matter, and Counterclaim raising all applicable statutes of limitations, laches, and equitable estoppel, among other claims.  The basis for his *res judicata* and/or collateral estoppel claim was the Honorable Judge Eugene Fike's September 14, 2004, ruling that the Agreements were not incorporated into the Divorce Decree.  Appellee filed an Answer to Appellant's New Matter and Counterclaim].
>
> ***
> Appellee filed an Amended Complaint on March 31, 2010.  In that Amended Complaint, Appellee aver[red] that pursuant to the

- 2 -

terms of the Agreements, Appellee is to receive certain periodic payments which amount to $20,000.00 per year with an increase in February of each year to be determined by the Consumer Price Index. Am. Compl. ¶¶ 5, 9. It is averred that Appellant has failed to comply with the provision requiring him to make these payments to Appellee. *Id*. at ¶ 9. Additionally, Appellee aver[red] that the Agreements were not properly entered into as the Appellant failed to make a full disclosure of his assets in connection with the Agreements. *Id*. at ¶ 8.

Appellant filed Preliminary Objections to the Amended Complaint on September 17, 2010. . . . After oral argument on the Preliminary Objections, The Honorable Judge David C. Klementik held in his Order dated June 6, 2011, that:

> [T]he Preliminary Objections to the Amended Complaint are sustained to the extent that the Plaintiff [Appellee] shall file an Amended Complaint within 30 days specifically detailing the nature of the violation of the terms of the Post Nuptial Agreement and the precise nature of the lack of disclosure of the Defendant's [Appellant's] assets which became the consideration for the Agreement; and,
>
> Further, the Plaintiff shall include a separate count which details the breach of the trust provisions by the trustee and the nature of the remedy being requested.

Order, June 6, 2011.

Appellee filed a Second Amended Complaint on June 7, 2011. In that Second Amended Complaint, Appellee aver[red] again that Appellee and Appellant entered into the Agreements, that the Agreements were in lieu of any future support for herself, that Appellee is to receive certain periodic payments, and assert[ed] three counts[, one for breach of contract and two in equity for failure to disclose all assets owned and for mismanagement of the Trust, respectively.] Second Am. Compl. ¶¶ 6, 8, 14, 25, 32, 41.

[Appellant filed Preliminary Objections to the Second Amended Complaint on October 13, 2011. The court overruled these Preliminary Objections on January 4, 2012. Eventually, Appellee filed a motion for contempt on April 11, 2012, for Appellant's failure to comply with the Agreements, and Appellant filed

- 3 -

Preliminary Objections and a Motion to Strike in response. On April 30, 2012, Appellant filed a Motion for Summary Judgment, in which he raised his previous claims of equitable estoppel, laches, statute of limitations, and *res judicata*.]

Appellee filed an Amended Motion for Contempt/Motion to Enforce on November 6, 2012[, in which she argued that Appellant had made no payments whatsoever since August of 2011, and thus, Appellee had been unduly prejudiced. Am. Mot. for Contempt/Mot. to Enforce ¶ 3. Also on that date, Appellee filed an Answer to Appellant's Preliminary Objections/Motion to Strike.

Appellee argued that the court had jurisdiction despite the fact that there was no court order because the court has jurisdiction to order Appellant to be compliant with the terms of the Agreements. Answer to Prelim. Obj'ns/Mot. to Strike ¶ 2. . . .

Appellee also filed an Answer to Appellant's New Matter and Counterclaim on that same date. Appellee claimed that the court had jurisdiction to hear all of the issues raised in her Complaint, that her acceptance of previous payments made by Appellant did not constitute waiver and/or estoppel, that Appellant is not entitled to any form of setoff or counterclaim for the fair market value of the use of the marital home in accordance with the Agreements, that Appellee has done all that she has been required to do relative to the maintenance of the property and use of the shed in accordance with the Agreements, that the terms of the Agreements provide waiver of Appellant's rights to any and all claims of alimony and support, that Appellee maintained the property to the best of her ability while not receiving payments from Appellant, and that the issue of [her cohabitation with another] is wholly irrelevant [to Appellant's obligation to make payments under the Agreements]. Answer to New Matter and Countercl. ¶¶ 48, 50, 51, 52, 57, 1, 3.

In determining Appellant's Amended Motion for Contempt/Motion to Enforce, the Honorable Judge David C. Klementik held that the Honorable Judge Eugene Fike's ruling that the Agreements were not incorporated into the Divorce Decree makes no statement regarding the cause of action to enforce the provision of the Agreements or whether Appellee was precluded from using Divorce Code remedies and ordered the judgment be entered in favor of Appellee and against Appellant pursuant to the

- 4 -

undisputed lapse in payment by Appellant. Mem. & Order, January 19, 2014, 3, 6.

[Judge Fike thereafter denied Appellant's Motion for Reconsideration on grounds that] Appellant does not contest he has failed to make payments to Appellee in the preceding fourteen months, that Appellant is bound by the Agreements to make payments to Appellee even if the trust fund set forth in the Agreements is depleted, and that the January 22, 2014, order was an interim order and judgment based on Appellant's admitted default. Mem. & Order, February 20, 2014, 1, 2.

Appellant filed a Notice of Appeal [to this Court on February 21, 2014, but the Superior Court] held in a non-precedential decision that the order in question was not a final order and . . . it lacked jurisdiction to hear the appeal. [Memorandum Decision,] February 27, 2015, 2, 3. [The Pennsylvania Supreme Court] denied Appellant's Petition for Allowance of Appeal on August 10, 2015.

Appellee filed another Motion for Contempt/Motion to Enforce on January 5, 2017. Appellee again contended that Appellant was required by the Agreements to make monthly payments to her, that Appellant has failed to make any payments since August of 2011, that Appellee has been unduly prejudiced by Appellant's refusal to make payments, that the trial court has previously ordered Appellant to make payments in accordance with the Agreements, that the Appellant continued to refuse to make payments to Appellee despite the court order, and she therefore requested that the trial court issue an order holding Appellant in contempt of court and issue appropriate sanctions. Mot. for Contempt/Mot. to Enforce, January 5, 2017, ¶¶ 2, 4, 5, 7.

Appellant filed an Answer to the Motion for Contempt/Motion to Enforce on January 13, 2017. Appellant claims that he has made no payments because the Trust is insolvent "due to the market collapse in 2007/2008," and neither Appellant nor the Trust has any financial resources to make the payments to Appellee. Answer to Mot. for Contempt/Mot. to Enforce ¶¶ 3, 7. Additionally, Appellant filed a Motion to Strike arguing that the Motion for Contempt/Motion to Enforce is improper because Appellee has refused offers by Appellant to convey the marital property to allow her to sell the real estate and reiterating that Appellant does not have the financial ability to make payments in

- 5 -

accordance with the Agreements. Mot. to Strike ¶¶ 1, 2, 5. Further, Appellant continued to object to this case proceeding within the Divorce Code. *Id*. at ¶ 6.

After oral argument on Appellee's Motions, the court ordered that judgment was entered in favor of Appellee and against Appellant in the amount of $111,666.66 . . . pursuant to the undisputed lapse in installment payments by Appellant. Order, March 1, 2017, 1. It was additionally ordered that Appellant recommence the monthly installment payments in the amount of $1,666.66, pending a resolution of all other disputed factual and legal matters. *Id*. at 1-2.

A hearing on Appellee's Motion for Contempt/Motion to Enforce was also ordered to be scheduled, in which any and all matters raised in those motions, including Appellant's ability or inability to pay under the terms of the Agreements, would be addressed. *Id*. at 22. Also at that argument, Appellant's Motion to Strike Appellee's Motion for Contempt/Motion to Enforce was denied. Order, March 1, 2017.

The hearing on Appellee's Motion for Contempt/Motion to Enforce was held on March 20, 2017. On the record, the trial court found that "given the real estate holdings owned by the [Appellant] and the amount of funds expended by [Appellant] in relation to the rental and maintenance of the Florida property, that the [Appellant] does have the current ability to pay the amounts owed to [Appellee] under the terms of the [Agreements.]" Hr'g Tr. 80:18-24.

Appellant was found to be in contempt of the trial court's orders dated January 19, 2014, and March 1, 2017. Order, March 20, 2017. The trial court further ordered Appellant to make payment to Appellee in the amount of $111,666.66 on or before June 20, 2017, and if the Appellant failed to make that payment and purge himself of his contempt on or before June 20, 2017, that Appellant shall be incarcerated for a period of sixty (60) days in the Somerset County Jail. *Id*.

Appellant objected on the record to the Order arguing that the real estate owned by him is jointly owned by himself and his current wife and rearguing that these types of actions, which are purely contractual, do not allow such contempt orders. Hr'g Tr. 82:10-19. The trial court responded to the first objection:

Clearly, the evidence today indicates that the two parcels of real estate . . . were owned by Appellant in his own name in August 2011 [. . . .] [T]o the extent that he chose to add someone else's name to those assets which he owned in his own name, unencumbered, that were available to meet his obligations under the terms of the [A]greements and this Court's orders, then he does so at his own peril.

Hr'g Tr. 82:23-25, 83:1-14. [The trial court subsequently denied Appellant's Motion for Reconsideration.]

Appellant filed a Notice of Appeal on April 18, 2017. . . . The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on April 28, 2017. Appellant complied with this order. . . .

Trial Court Opinion, filed June 12, 2017, at 1-12.

Appellant presents the following issues for our review:

**I. DID THE LOWER COURT ABUSE ITS DISCRETION FINDING HUSBAND, APPELLANT, ALVIN D. CUNNINGHAM, IN CIVIL CONTEMPT OF COURT AND INCARCERATING HI[M] FOR 60 DAYS, SETTING $111,666.66 AS A PURGE, FOR THE NONPAYMENT BY THE ALVIN D. CUNNINGHAM TRUST TO THE APPELLEE BEVERLY L. CUNNINGHAM, WHEN THE EVIDENCE PRESENTED SHOWED HIS PRESENT INABILITY TO PAY BASED ON INCOME OF $662.00 A MONTH FROM SOCIAL SECURITY?**

**II. DID THE COURT FAIL TO FOLLOW THE PROPER PROCEDURES AS MANDATED BY THE APPELLATE COURTS IN FINDING THE APPELLANT IN CONTEMPT?**

**III. DID THE IMPOSITION OF THE PAYMENT OF $111,666.66 WITHIN 60 DAYS VIOLATE THE APPELLANT'S RIGHT OF DUE PROCESS?**

**IV. WAS THE COURT ORDER IN ESSENTIAL INDIRECT CRIMINAL CONTEMPT [SIC] LIMITED THE REMEDY TO A FINE ONLY, 42 Pa.C.S.A. § 4132?**

- 7 -

**V. CAN THE APPELLANT, ALVIN D. CUNNINGHAM, INDIVIDUALLY BE FOUND IN CONTEMPT OF COURT AS HE HAS PAID IN EXCESS OF $300,000 IN FUND[S FROM] THE TRUST?**

**VI. IS SECTION 23 PA.C.S.A. § 3105(C) APPLICABLE TO THIS CASE?**

**VII. DID THE TRIAL COURT ABUSE ITS DISCRETION IN NOT ORDERING PAYMENTS AND NOT ALLOWING THE HUSBAND TO CONVEY HIS ONE-HALF INTEREST IN THE MARTIAL [SIC] HOME FOR CREDIT AGAINST HIS DEBT?**

Appellant's brief at 6.

This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. *Bold v. Bold*, 939 A.2d 892, 894–895 (Pa.Super. 2007). "If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused." *Gates v. Gates*, 967 A.2d 1024, 1028 (Pa.Super. 2009).

In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent. *Harcar v. Harcar*, 982 A.2d 1230, 1235 (Pa.Super. 2009).

Initially, Appellant contends that the trial court erred in finding him in contempt for violating the trial court's orders dated January 19, 2014, and March 1, 2017, where he established his present inability to pay.

If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. **Sinaiko v. Sinaiko**, 664 A.2d 1005, 1010 (Pa.Super. 1995). The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. **Commonwealth ex rel. Ermel v. Ermel**, 469 A.2d 682, 683 (Pa.Super. 1983). The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party. **Commonwealth Dept. of Envtl. Resources v. Pennsylvania Power Co.**, 316 A.2d 96, 103 (Pa.Cmwlth. 1974).[1]

While the burden is on the complaining party to prove noncompliance by a preponderance of the evidence, the "present inability to comply is an affirmative defense which must be proved by the alleged contemnor." **Barrett v. Barrett**, 368 A.2d 616, 621 (Pa. 1977).

With respect to the imposition of a purge condition, our Supreme Court has held that:

> where, as here, the court in civil proceedings finds there has been willful noncompliance with its earlier support orders constituting contempt but the contemnor presents evidence of his present inability to comply and make up the arrears, the court, in imposing coercive imprisonment for civil contempt, should set conditions for

---

[1] While not binding upon this Court, the decision of the Commonwealth Court is instructive for present purposes.

- 9 -

purging the contempt and effecting release from imprisonment with which it is convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply.

*Id.*, 368 A.2d at 621.

Here, the trial court relied on evidence that Appellant, for the relevant time up to and including August 2011, owned exclusively two valuable and unencumbered parcels of real estate—one a residential property in Maryland and the other a farm consisting of a residential home and approximately 300 acres of land situate in Somerset County, Pennsylvania. At the hearing, Appellant estimated the fair market value of each property to be $200,000.00. N.T. 3/20/17 at 39-40.[2] Appellant could have leveraged or liquidated these properties, the court concluded, in order to meet his obligations to fund the trust as necessary to cover arrearages and continue payments thereunder.[3]

_____

[2] Specifically, Appellant testified that he believed his farm's worth was equivalent to that of a neighboring farm that recently sold for $200,000.00. N.T. at 40.

[3] By way of background, we note the trial court acknowledged that at the time of the contempt proceedings in question Appellant and his current wife owned the real estate parcels as a tenancy by the entireties. However, the court inquired into whether Appellant performed the transfers with the intent to avoid his duty under the parties' Trust Agreement "to make any additional contributions as required to fulfill the terms of his obligation." Trial Court Opinion, at 22.

In this vein, the trial court took judicial notice of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S.A. §§ 5105-5110, and interpretive decisional law holding "that in Pennsylvania, 'entireties property is unavailable to satisfy the claims of the creditor of only one of the tenants,' but that 'when a spouse conveys individual property to a tenancy by the entireties in fraud of creditors, the creditor may nevertheless execute against

Moreover, to the extent the Maryland property serves as the primary residence for Appellant and his wife, evidence adduced at the hearing established that the couple nevertheless rented, year-round, a Sarasota, Florida vacation home at $634 per month plus an additional monthly payment of $30 in utilities. Hence, the trial court, as finder of fact, determined Appellant was not credible when he testified that he lacked the ability to comply with the court's order requiring him to maintain payments to Appellee. Because the record supports the trial court's factual determination, we find no error in the conclusion that Appellant failed to prove his affirmative defense that he was unable to comply notwithstanding his good faith attempts to do so.

_____

the property so conveyed.'" Trial Court Opinion, at 21 (citing **_Knoll v. Uku_**, 154 A.3d 329, 335 (Pa.Super. 2017) (quoting **_Garden State Standardbred Sales Co. v. Seese_**, 611 A.2d 1239, 1243 (Pa.Super. 1992)). **_See_** 12 Pa.C.S.A. § 5109

It was only after the Trust became insolvent and Appellant ceased making payments in August 2011 that Appellant remarried in September 2011 and added his new wife's name to the real estate parcels. Based on this evidence, the court deemed the transfer fraudulent as that word is defined under PUFTA because the creditor's (Appellee's) claim arose before the transfer, the debtor (Appellant) made the transfer without receiving a reasonably equivalent value in exchange for the transfer, and the debtor became insolvent as a result of the transfer. Trial Court Opinion, at 21 (citing **_Knoll_**, 154 A.3d at 333).

The court determined, therefore, that Appellant had knowingly violated the Trust Agreement's provision requiring him to fund the Trust as needed to fulfill his payment obligations to Appellee, as he knew his real estate assets were available for liquidation to meet such obligations once the Trust assets had dissipated. _See_ Hearing Transcript, at 83. Nowhere in Appellant's statement of questions presented does he challenge the court's findings in this regard.

- 11 -

Furthermore, we reject Appellant's contention that evidence failed to establish beyond a reasonable doubt his present ability to pay the purging condition. Appellant admitted that when the trust was depleted and he ceased making payments to Appellee, he, alone, owned unencumbered real estate with a present-day value of approximately $400,000.00. Rather than fulfill his obligations under the parties' agreement to support Appellee by resorting to these assets, he transferred his ownership rights to a tenancy by the entireties when he married his current wife. The court concluded that Appellant entered this transaction with the specific purpose of depriving Appellee of her rights under the parties' agreement, and we discern no error with this finding. We, therefore, reject Appellant's contention that evidence failed to establish beyond a reasonable doubt his present ability to pay the purging condition set by the court.

In Appellant's second and sixth issues, he argues that the court lacked authority to use its equitable powers to enforce a private support agreement that was never merged in the parties' divorce decree. Appellant's brief at 7 (citing **Sonder v. Sonder**, 549 A.2d 155 (Pa.Super. 1988) (*en banc*), *superceded by statute as stated in* **Sinaiko**, **supra**. Instead, only the law of contracts governed the parties' agreement, Appellant maintains. "To jail a person for failing to pay on his private agreement," Appellant posits, "is prohibited by our constitutions, state and federal, as imprisonment for debt." Appellant's brief at 9. We disagree.

In **Sonder**, this Court sitting *en banc* addressed, *inter alia*, whether the trial court had erred when it held husband in contempt and ordered him to pay a $10,000.00 purging condition to avoid commitment to jail for ninety days. The husband argued that incarceration was an inappropriate sanction for violating a support agreement not merged with a divorce decree. This Court agreed, as the parties had rejected the benefit of Divorce Code provisions calling for enforcement through court orders and enabling procedures for contempt. **Id.**, 398 A.2d at 165.

**Sonder**, however, "did not apply the 1988 amendments to the Divorce Code which specifically authorize the incarceration of a party for failure to comply with the terms of a separation agreement[,]" as the parties in **Sonder** executed their agreement prior to 1988 and were thus not bound by the terms of the amendments. **Sinaiko**, 664 A.2d at 1012. In **Sinaiko**, we explained how the amendments specifically authorize a court to enforce a subsequent agreement as if it had been an order of the court:

> Sections 3105(a) and 3502(e) of the Divorce Code[] specifically authorize the trial court to order commitment of the person for a period of less than six months. Section 3105 provides in pertinent part:
>
> **§ 3105 Effect of agreement between parties**
>
> **(a) Enforcement.**—A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though the agreement had been an

- 13 -

order of the court except as provided to the contrary in the agreement.

23 Pa.C.S.A. § 3105(a).

Section 3502 of the Divorce Code delineates the powers of the court when a party fails to comply with the terms of an order of equitable distribution or with the terms of a private agreement between the parties. That section specifically provides:

> **(e) Powers of the court.**—If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> * * * * * *
>
> (6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months[.]

23 Pa.C.S.A. § 3502(e)(6).

*Sinaiko*, 664 A.2d at 1012–13.

As in *Sinaiko*, Appellant and Appellee entered into their Trust Agreement after the 1988 amendments and subsequent verbatim amendments took effect. Therefore, the trial court appropriately followed the decision in *Sinaiko* by applying the enforcement provisions of Section 3105

and imposing a lawful term of incarceration pursuant to Section 3502(e)(6) should Appellant fail to pay the purging condition.

*Sinaiko* is likewise dispositive of both the latter part to Appellant's third issue and his fourth issue. In the latter part to Appellant's third question, he argues that the court's order of incarceration violates Article 1, Section 16 of the Pennsylvania Constitution, which provides:

### § 16  Insolvent Debtors

The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law.

PA. CONST. art. 1, § 16.  Appellant's argument fails for the reasons expressed in *Sinaiko*:

We reject Husband's argument.  Husband was found in civil contempt, not criminal contempt, after the court gave him notice and an opportunity to be heard.  The court conducted an evidentiary hearing where Husband was given the opportunity to present his defense to Wife's contempt petition.  Likewise, Husband was not jailed for failing to pay a debt contrary to the provisions of the Pennsylvania Constitution.  Husband was sentenced to a conditional term of imprisonment as a coercive sentence for civil contempt based on his failure to abide by a court order.  The court order was entered after the court found that Husband was obligated to comply with the terms of the separation Agreement he voluntarily entered into with Wife.  As stated earlier, the trial court acted within its statutory authority under the terms of the Divorce Code when it sentenced him to fourteen days in prison.  Wife is more than just a creditor as that term is used in the Constitutions.  Husband's debt to her arose as a result of a court order—not just a private agreement between the parties.  The court had the power to enforce its order by means of contempt and incarceration.

*Id.*, 664 A.2d at 1015.

- 15 -

In Appellant's fourth issue, he baldly asserts that the court's order violated Sections 4132, Attachment and summary punishment for contempts, and 4133, Commitment or fine for contempt, of the Judicial Code. As observed in **Sinaiko**, "these statutes apply when a party is in direct criminal contempt of court; that is when a party engages in misconduct in the presence of the court with the intent to obstruct the judicial proceeding which actually obstructs the administration of justice." Here, as in **Sinaiko**, the trial court imposed punishment as a sanction for his civil contempt based upon his failure to comply with a previous order of the court. Accordingly, Sections 4132 and 4133 do not apply.

In the initial part to Appellant's third issue, he argues the court violated his procedural due process rights by ordering him to satisfy the purging condition within 60 days of the order finding him in contempt. Trial courts generally follow a five-step process in determining whether a trial court complied with the procedural requirements for a finding of contempt: "(1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute, (4) a hearing on the contempt citation, and (5) an adjudication." **Wood v. Geisenhemer–Shaulis**, 827 A.2d 1204, 1208 (Pa.Super. 2003) (quotation omitted).

However, we have held that "[f]ulfillment of all five factors is not mandated." **Id.** "[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation

- 16 -

and defense." *Id.* (quoting **Diamond**, 792 A.2d at 601). The record clearly demonstrates that Appellant had notice of the contempt allegations and an opportunity to respond. We, therefore, find no merit to this claim.

In support of his fifth issue, Appellant asserts that he may not be found in contempt where he had already paid in excess of $300,000.00 to Appellee from the Trust and had established that stock market losses endemic in the late 2000s had depleted the Trust fund through no fault of his own. Notwithstanding the credibility of Appellant's testimony in this regard, the trial court ruled that Appellant remained responsible to continue payments in conformity with the parties' agreement so long as he was able to do so. As discussed above, the trial court deemed Appellant capable of funding the Trust sufficiently to both erase arrearages and make future payments. Given a record supportive of the trial court's determination, we agree that Appellant's history of payments and lack of misfeasance with respect to the Trust did not insulate him from the terms of his agreement with Appellee when he retained the ability to comply with its payment terms.

Finally, in Appellant's seventh issue, he charges error with the trial court's refusal to accept his offer to convey his one-half interest in the marital residence, where Appellee continues to reside, as satisfaction of his purging condition. This argument centers on Appellant's position that Appellee may then sell her residence and acquire the proceeds, which Appellant estimated at $100,000.00. Her refusal to accept this offer, Appellant maintains, leaves her with "unclean hands" so as to undermine her complaint against him.

The court rejected Appellant's proposal as having no foundation in either law or reason, as no authority mandates acceptance of such a conveyance in lieu of a conforming payment, and the benefit is specious, as it would leave Appellee without a home. Under the parties' agreement, Appellee may enjoy sole use and possession of the home while also receiving payments due under the agreement. The court determined Appellant has the ability to make continued payments in accordance with this agreement. We, therefore, discern no error of law or abuse of discretion in the trial court's resolution of this issue.

For the foregoing reasons, Appellant's appeal fails.

Order is **AFFIRMED**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2018