J-A03024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANDREA LIEBERSOHN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID A. DYER | : | No. 879 MDA 2020 |

Appeal from the Order Entered January 29, 2020,
in the Court of Common Pleas of Lycoming County,
Civil Division at No(s): FC-2012-0020925-DI.

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED MARCH 31, 2021**

A.L. (Wife) appeals, *pro se*, the decision by the Lycoming County Court of Common Pleas to find her in contempt for a second time, after Wife failed to pay D.A.D. (Husband's) attorney's fees following her first contempt.[1] We affirm.

The factual and procedural background is as follows. On January 24, 2020, the trial court determined Wife violated the parties' settlement agreement when she harassed Husband. Specifically, the court determined Wife harassed Husband when she sought to hold him in contempt of a temporary Protection From Abuse (PFA) order, even though the parties agreed to settle all previous PFA claims. The court ordered Wife to pay Husband

_____

[1] Wife's appeal from the first contempt finding is separately listed before this panel. ***See*** 341 MDA 2020.

$3,000 in attorney's fees he incurred to oppose Wife's wrongful action. Wife appealed that decision, but she did not apply for a stay pending appeal, pursuant to Pa.R.A.P. 1731(b). Thus, Wife was obligated to comply with this sanction while her appeal was pending.

In order to fully comply, Wife had to pay Husband's counsel by February 24, 2020. Wife eventually paid, but only on February 28, with a check dated February 26, after Husband filed a second petition for contempt. On June 3, 2020, the trial court held a brief hearing on Husband's second contempt petition; both parties appeared with counsel. *See generally* N.T., 6/3/20, 1-18.

Wife conceded she had an obligation to pay the sanction even though her appeal was pending, and she admitted the payment was late. However, she maintained her noncompliance lacked wrongful intent. She testified she waited to pay the sanction because the parties initially discussed using a payment plan. Negotiations about the payment plan fell through – if they were ever seriously considered – and on February 19 (five days before the deadline), Wife initiated the transfer process. Wife testified she used electronic banking through USAA, because she did not have access to paper checks. In other words, Wife went on USAA's website and directed the bank mail a paper check to Husband's counsel. Wife testified that when she initiated the transfer process, she realized the earliest arrival date available was February 26 (two days after the deadline). *See id.* at 11-12; *see also* Wife's

Brief at 19. Wife testified she then informed **her counsel** of the scheduled payment and estimated arrival date. **See id.**; **see also** Wife's Exhibit 1.

Husband's counsel argued Wife demonstrated willful noncompliance, notwithstanding Wife's reasons for the delay. First, Husband's counsel contended Wife had the responsibility to ensure the payment was made on time. Second, Husband's counsel averred they were not informed the check was in the mail, and if had they been, they would not have prepared a contempt petition. Husband's counsel stated they even gave Wife a two-day grace period before filing the second contempt petition, but that the date of the check suggested it was not even issued until **after** the petition was filed. The court determined Wife was again in contempt and ordered her to pay $418, the cost that Husband's counsel charged to bring the second petition.

Wife appealed and presents the following questions, which we reorder for ease of disposition:

1. Did the lower court commit errors of law in finding [Wife] in contempt where [Wife] should have been afforded absolute immunity and where the original order should be found invalid?

2. Did the lower court commit an error of law or abuse of discretion in finding [Wife] in contempt where [Husband] lacked standing to bring his petition for contempt?

3. Did the lower court commit an error of law and/or abuse of discretion in holding [Wife] in contempt where [Husband] failed to supply sufficient evidence to prove the required elements of that finding?

4. Did the lower court commit errors of law and/or plain errors in holding [Wife] in contempt based on

assumptions contradicted by the facts presented, the evidence, and its own reasoning?

5. Did the lower court commit an error of law and/or abuse of discretion in failing to consider [Wife's] ability to comply with its order and where the terms created an extreme hardship for [Wife]?

Wife's Brief at 2-3 (superfluous capitalization omitted).

Before we reach the merits of Wife's appeal, we address whether she properly preserved these five issues. In her Rule 1925(b) concise statement, Wife originally submitted 15 issues to the trial court. The trial court opined that most of those issues related to Wife's first contempt appeal and had no bearing on the instant matter. *See* Trial Court Opinion (T.C.O.), 8/10/20, at *4-5 (not paginated). Similarly, we conclude Wife's first two appellate issues relate to her previous appeal and are thus waived. However, Wife properly preserved her third, fourth, and fifth issues. We begin with our analysis by observing our standard of review of contempt orders.

On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion. *Thomas v. Thomas*, 194 A.3d 220, 225 (Pa. Super. 2018) (citing *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73

A.3d 630, 637 (Pa. Super. 2013). We are also mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. **Garr**, 773 A.2d at 189 (citations omitted). Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings. **Thomas**, 194 A.3d at 225.

"In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the [contemnor] is in noncompliance with a court order." **MacDougall v. MacDougall**, 49 A.3d 890, 892 (Pa. Super. 2012). "To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." **Id.** Nevertheless, "a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." **Habjan**, 73 A.3d at 637.

"The imposition of counsel fees can serve as a sanction upon a finding of civil contempt." **Sutch v. Roxborough Memorial Hospital,** 142 A.3d 38, 69; **Rhoades v. Pryce**, 874 A.2d 148, 152 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1124 (Pa. 2006). The purpose of awarding counsel fees in this context is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so

it can be coercive and compensatory but it cannot be punitive." ***Sutch***, ***supra*** at 69. We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion. ***Mrozek v. James***, 780 A.2d 670, 674 (Pa. Super. 2001).

We reiterate Wife waived her first two issues, so we turn to her third matter. Wife alleges there was insufficient evidence to prove she was in contempt. Specifically, Wife limits her contention to the third element of the three-part contempt analysis; she concedes the first two elements were satisfied, insofar as she understood she had an obligation to pay Husband's fees, and the check arrived four days late. ***See MacDougall***, ***supra***. However, Wife claims she did not act with the requisite, wrongful intent. Wife presents two primary arguments to support her claim.

First, Wife argues she lacked wrongful intent, because she informed ***her*** counsel that the transfer was initiated on February 19 and that the payment might arrive late. ***See*** Wife's Brief at 20. The trial court concluded that Wife's excuse was not enough. Indeed, the trial court seemed to specifically fault Wife for not contacting Husband's counsel to explain the delay. ***See*** T.C.O., at *2-3. Wife argues she was not authorized to communicate directly with Husband's counsel, perhaps in reference to Rule of Professional Conduct 4.2, which prohibits communication between a lawyer and the opposing litigant, when the lawyer knows the opposing litigant has representation, without the consent of the other lawyer. ***See*** Pa.R.P.C. 4.2. However, Wife conceded that she does communicate directly with Husband's counsel, on another matter

involving Husband, where she proceeds without representation. Moreover, Wife did not inform Husband that she initiated the transfer. *See* N.T. at 14.

In our narrow review, we conclude Wife's argument is meritless. Wife had a responsibility to ensure the payment arrived on time. Although a courtesy call to Husband or his counsel, by either Wife or her attorney, might have persuaded Husband not to bring a second contempt petition, it does not follow that the same obviated Wife from her responsibility to timely comply. Ultimately, the decision rested with the trial court. We cannot say the court erred or that its decision lacked reason. *See Harcar*, 982 A.2d at 1234.

Wife advances an alternative reason why she lacked wrongful intent. She claims her payment's late arrival was the bank's fault. *See* Wife's Brief at 19. Wife testified that "online [banking] was the only method that I have," meaning she had no ability to send her own paper check to Husband's counsel, but instead had to direct her bank to transfer the funds. *See* N.T., at 10. This testimony was refuted by Husband, when he explained he utilizes paper checks from USAA, which can be issued to customers upon request. *Id.* at 14-15.

The trial court was not persuaded by Wife's justification, and in our narrow review, we cannot conclude the court's decision lacked reason. Although we observe the testimony that access to a USAA ATM was complicated, Wife had the funds on February 19, with five days to comply with the court's order. She chose not to ensure her compliance. That Wife did not have paper checks is not an excuse, but rather a reason why Wife should have

given herself extra time to comply with the order. Whether she had difficulty ascertaining the funds, sending the funds, or was frustrated that Husband and/or Husband's counsel refused her installment proposal, Wife was content to let the check arrive when it arrived. The trial court did not abuse its discretion when it inferred Wife's wrongful intent.

In Wife's fourth appellate issue, we address whether the court's decision was against the weight of the evidence. We review weight claims for an abuse of discretion. *Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019). We note further that appellate review of a weight claim is highly deferential.

> A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

*Id.* (internal citations and quotations omitted).

Here, the trial court weighed the following facts. Wife was sanctioned for her harassment. She did not seek to stay that order pending appeal. She acknowledged she had to pay Husband, but she delayed while hoping to achieve more favorable terms than those ordered by the court. When rebuffed, Wife made no effort to timely comply, even though she had actual, prior knowledge that her desired mode of transfer would cause the payment

to arrive late. Two after the deadline, with no check in hand, Husband's counsel brought a second contempt petition. The court further sanctioned Wife for the expense of bringing this second contempt petition ($418) and gave her 60 days to comply.

As mentioned above, we are mindful that each court is the exclusive judge of contempts against its process, perhaps especially so in a litigious and acrimonious family law case such as this, where the trial court seeks to prevent its process from failing into disrepute. **See Habjan**, **supra**. Viewing the court's decision through this lens, we cannot the court abused its discretion.

Wife's final appellate issue concerns her affirmative defense. On that matter, we have said:

> If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that [s]he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

**Cunningham v. Cunningham**, 182 A.3d 464, 471 (Pa. Super. 2018) (internal citations omitted).

Wife argues the court erred when it determined Wife did not prove she had an inability to timely pay the $3,000. During the hearing, Wife testified she had difficulty coming up with the money to pay the $3,000 award:

I know that I sent correspondence to you [(Wife's counsel)] multiple times. I received back correspondence back from you as well as your secretary that you both reached out to [Husband's counsel] multiple times with no, um, I guess return agreement on a payment plan. Um, so I was - - I knew that the money needed to be paid. It was my intent to pay it. I sent the money on the 19th [of February]. It was not my intent to have it delivered late. Um, I don't have any control over the mail and, like I said, I don't have any physical checks or any other way to get that money out there. I know I spoke to you stating that, again, it was a hardship and I needed to borrow money and make sure that there was going to be money in the account to be able to have the check clear. And then when I hadn't heard from you by the 19th I knew that I - - I needed to send the money at that time.

N.T., 6/3/20, at 9.

Clearly the trial court was not persuaded by Wife's claim that she lacked the ability to comply. First, Wife lays her tardy payment at Husband's feet. She claims she approached Husband about using a payment plan on January 24, 2020 – the day the court ordered the sanction. *See* Wife's Brief at 23. However, Wife's own testimony indicated she chose to delay sending the money, hoping Husband would be amicable to a payment plan. In other words, the lateness was not due to an impossibility to perform, *i.e.* the fact she had to borrow the money and then wait for the money to clear. Rather, Wife's tardiness had more to do with her decision to wait until the 11th hour to see whether she had to pay it all at once. Once it became apparent to Wife that Husband would not accept installment payments, Wife began the transfer process. By that time, however, Wife's use of her preferred method of paying bills – online banking with USAA – meant the check would arrive late. Even

then, Wife had five days to find an alternative option, but instead she chose to initiate the transfer, regardless of whether it arrived on time. Under these facts, we conclude the court did not abuse its discretion when it determined Wife failed to prove this affirmative defense.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/31/2021