J-A03023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANDREA LIEBERSOHN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID A. DYER | : | No. 341 MDA 2020 |

Appeal from the Order Entered January 29, 2020,
in the Court of Common Pleas of Lycoming County,
Civil Division at No(s):  FC-2012-0020925-DI.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED MARCH 31, 2021**

Andrea Liebersohn (Wife) appeals, *pro se*, the decision by the Lycoming County Court of Common Pleas to find her in contempt of a settlement agreement, which, ***inter alia***, prohibited Wife from harassing David A. Dyer (Husband).  After review, we affirm.

Both parties acknowledge the acrimonious and litigious history of this case, some of which is unintelligible from the record, and even more of which is irrelevant to our disposition.  The pertinent background is as follows.  The parties divorced in June 2016, and Wife has since married Benjamin Liebersohn (Wife's Spouse).  Although the parties had four biological children, Husband eventually consented to the termination of his parental rights, which facilitated the children's adoption by Wife's Spouse.  In January 2018, Wife obtained a temporary Protection From Abuse (PFA) order against Husband,

but evidently the matter lingered for over a year without ever coming to a final hearing. These facts resulted in four separate dockets: the divorce docket (No: 12-20,925); the support docket (No: 12-21,246); the custody docket (12-20,788); and the PFA docket (No: 18-20,016).

On January 2, 2019, the parties reached an agreement to settle all outstanding issues across the four dockets. Husband and Wife referred to this settlement agreement as the Stipulation, which they asked the court to give legal effect by order. That order provides in its entirety: "And now, this 2nd day of January, 2019, the [c]ourt enters the attached Stipulation as an Order of Court." *See* Order (the Stipulation), 1/2/19.

At issue in this appeal is Paragraph 4 of the Stipulation, wherein the parties agreed Wife would withdraw her PFA petition against Husband (thereby causing the temporary PFA order to expire), once the trial court confirmed Husband's consent to the adoption of the children by Wife's Spouse. Importantly, Paragraph 4 also utilized language from the Protection From Abuse Act; the parties promised not to "harass, abuse, stalk or threaten" each other, even after the withdrawal of the PFA petition. Paragraph 4 provides:

> With respect to Docket No: 18-20,016 [(the PFA docket)], the parties agree that the PFA shall be withdrawn with prejudice with respect to any of the factual allegations contained in the PFA Petition on the day that [Husband's] consent [to allow Wife's Spouse to adopt] is confirmed. However, the parties specifically agree that [Husband] shall not harass, abuse, stalk or threaten [Wife] or [Wife's Spouse]. [Husband] is specifically excluded and prohibited from going to [Wife's address]. In addition, [Wife and Wife's Spouse] shall not harass, abuse, stalk or threaten

- 2 -

> [Husband] at any place he may be. [Wife and Wife's Spouse] are specifically excused and prohibited from going to [Husband's address].

*See id.*, at ¶4.

But the parties did not keep the peace. In April 2019, the trial court found Wife in contempt for failing to make the children available for a visit with Husband. The court ordered Wife to pay $450 in attorney's fees. As a further sanction, the court continued the termination and adoption hearing until July 5, 2019, to afford Husband the final visitations Wife had blocked.

Around this same time, Wife and Wife's Spouse began pursuing a PFA contempt action against Husband. Wife's Spouse brought the matter to the district attorney's office, claiming Husband violated the no-contact provision of the temporary PFA order in March 2018 (ten months prior the entry of the Stipulation), when Husband texted Wife to say: "Have the kids call me." Wife's Spouse also alleged Husband still possessed firearms, also in violation of the temporary PFA order. As of Spring of 2019, the temporary PFA order was still active, because the termination and adoption proceedings had been continued.

In June 2019, the local district attorney's office declined to pursue the PFA contempt complaint. But in July 2019, **after** the termination and adoption, Wife's Spouse petitioned the trial court to review the district court's decision. In August 2019, the trial court ordered the district attorney's office

to reconsider the allegations.[1]  In September 2019, the district attorney's office then brought a PFA contempt complaint against Husband, based solely on the text message.[2]  The court issued a warrant, and Husband was arrested.

All told, the PFA contempt complaint pressed by Wife against Husband came some nine months *after* the entry of the Stipulation, *after* the adoption, and concerned Husband's conduct that occurred ten months *prior* to the Stipulation.  The court held a hearing on the matter and declined to find Husband in contempt.  The court noted that although Husband violated the temporary PFA order by sending Wife the text, Husband's violation was not willful.

Around the time of the hearing on the PFA contempt complaint, Husband petitioned the court to find Wife in contempt.  That contempt petition is the subject of this appeal.  Husband alleged Wife's pursuit of the PFA contempt complaint constituted a willful violation of Paragraph 4 of the Stipulation's prohibition against one party stalking or harassing the other.  Husband's sought Wife's incarceration, along with attorney's fees and costs.

The court held a hearing on Husband's contempt petition on January 24, 2020, where both parties appeared with counsel.  At the hearing, Wife

---

[1] The order was issued by a different judge of record.

[2] When the district attorney's office reconsidered bringing charges, the office concluded Husband sold his firearms after the temporary PFA order prohibited their possession.  Notwithstanding the order's prohibition against transferring the firearms, the district attorney's office declined to pursue this count in its complaint.

- 4 -

advanced several theories, but her primary argument was, by the terms of Paragraph 4 of the Stipulation, the temporary PFA order was still in effect until the adoption; Wife reasoned she was within her rights to seek a PFA contempt complaint. The court disagreed and determined Wife sought the PFA contempt complaint in order to harass Husband, in contravention of Paragraph 4 of the Stipulation. The court declined to order incarceration, but ultimately sanctioned Wife to pay Husband's attorney's fees in the amount of $3,000.

Acting *pro se*, Wife filed a proper and timely notice of appeal.[3] Her concise statement, filed pursuant to Pa.R.A.P. 1925(b), consisted of 22 matters complained of on appeal. Wife reduced those matters to a dozen issues in her statement of questions involved:

---

[3] It appears Wife was evidently confused about how to appeal the contempt order. The Stipulation and the order were entered on the divorce docket, but concerned the temporary PFA order on the PFA docket. Wife simultaneously appealed from the PFA docket (340 MDA 2020) and the contempt decision from the divorce docket (341 MDA 2020 – the instant matter). The trial court was apparently confused, as well. The court issued a statement in lieu of a Rule 1925(a) opinion, noting that there was no order entered on January 24, 2020 on the PFA docket, and recommended that we dismiss Wife's entire appeal.

This Court entered Rule to Show Cause orders directing Wife to clarify what order she meant to challenge. Wife responded, explaining that she meant to contest the January 24, 2020 order finding her in contempt and awarding attorney's fees. We discharged the Rule on 341 MDA 2020 and quashed Wife's appeal on 340 MDA 2020. Because the trial court explained its decision from the bench, our review is not impeded by the court's decision to forgo a traditional Rule 1925(a) opinion.

1. Did the lower court commit errors of law in failing to hold that [Wife] was entitled to immunity with regards to [Husband's] petition for contempt?

2. Did the lower court commit errors of law in finding [Wife] in contempt, where [Husband's] petition for contempt was illegal?

3. Did the lower court commit errors of law in finding [Wife] in contempt, where her actions were justified and the allegations she made were true?

4. Did the lower court commit errors of law in finding [Wife] in contempt, where [Husband] failed to allege facts or provide sufficient evidence to support a claim or the court's holding?

5. Did the lower court commit errors of law and violate [Wife's] constitutional rights during the process of and in finding [Wife] in contempt and further violate [Wife's] rights through its language and sanctions? [*Sic*]

6. Did the lower court commit errors of law in finding [Wife] in contempt, where it improperly interpreted the language [of] the Stipulation Agreement/Order and failed to consider that document in its entirety?

7. Did the lower court commit errors of law in finding [Wife] in contempt, where [Wife] did not knowingly or willfully disobey the Stipulation Agreement/Order?

8. Did the lower court commit errors of law and/or abuses of discretion in finding [Wife] in contempt under a different docket than the order [Wife] was accused of violating?

9. Did the lower court commit other errors of law and/or abuses of discretion with regards to the docket numbers and selectively acknowledging [Wife's] pleadings?

10. Did the lower court commit an error of law by sanctioning [Wife] to pay attorney's fees, where those fees were directly related to [Husband] having to defend against a charge of indirect criminal contempt

for violating a PFA order, where [Wife] was the victim and protected party?

11.    Did the lower court commit errors of law and violate [Wife]'s due process rights by failing to apprise her of her rights when facing a charge of indirect criminal contempt?

12.    Did the lower court demonstrate bias or the appearance thereof during the process of and in finding [Wife] in contempt of the Stipulation Agreement/Order?

Wife's Brief at 2-4 (superfluous capitalization omitted).

Before we reach the merits, we observe Wife's circumvention of our Rules of Appellate Procedure governing briefs, and we evaluate whether Wife has waived some or all of these issues. Although Wife is *pro se*, her status does not relieve her of her duty to properly raise and develop an appealable claim. *Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa. Super. 1996). This Court has stated:

> [A]ppellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. This Court may quash or dismiss an appeal if the appellant fails to confirm to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent [herself] in a legal proceeding must, to a reasonable extent, assume that [her] lack of expertise and legal training will be [her] undoing.

*In re Ullman*, 995 A.2d 1207, 1211-1212 (Pa. Super. 2010) (citations omitted), *appeal denied*, 20 A.3d 489 (Pa. 2011).

- 7 -

Here, Wife fails to conform with several tenets within our Rules of Appellant Procedure. Thus, many of her issues are waived.[4] Nevertheless, Wife has preserved the crux of her appeal, namely whether the court erred when it found Wife in contempt and ordered her to pay attorney's fees, and whether the trial court demonstrated bias. We begin with the contempt issue and our standard of review concerning such orders.

---

[4] For instance, when obligated to do so, Wife's brief does not specifically reference where she preserved the issues below, in circumvention of Rule 2117(c) and Rule 2119(e). Indeed, Wife made no objections, evidentiary or procedural, to the court during the hearing. In another instance of noncompliance, Wife presents a question she did not raise first in her concise statement, a violation under Rule 1925(b)(4) for which the consequence is waiver. "It is axiomatic that claims not raised in the trial court may not be raised for the first time on appeal." **Commonwealth v. Johnson**, 33 A.3d 122, 126 (Pa. Super. 2011) (citation omitted). **See** Wife's Question 4, **supra**.

But the biggest impediment to our review is that the Brief's argument section was not "divided into as many parts as there are questions or be argued," nor does Wife's Brief "have at the head of each part…the particular point treated therein, followed by such discussion and citation of authorities are deemed pertinent." **See** Pa.R.A.P. 2119(a). While Wife's Brief includes headings, many do not correspond with the questions Wife presents. Instead, they are jumbled, causing large swathes of Wife's argument to be indecipherable. Within these headings, Wife's argument is largely a personal account of the case, without a succinct articulation of where and how the trial court erred. And Wife only occasionally cites to the record or legal authority, the vast majority of which is irrelevant. As a consequence, our review is partially impeded. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **See Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted). After review, we conclude Mother has waived a number of her issues presented, specifically Questions 1-2, 4-5, 8-9, and 11.

When reviewing an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion. ***Thomas v. Thomas***, 194 A.3d 220, 225 (Pa. Super. 2018) (citing ***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." ***Harcar v. Harcar***, 982 A.2d 1230, 1234 (Pa. Super. 2009). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013). We are also mindful that this Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor. ***Garr***, 773 A.2d at 189 (citations omitted). Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings. ***Thomas***, 194 A.3d at 225.

"In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the [contemnor] is in noncompliance with a court order." ***MacDougall v. MacDougall***, 49 A.3d 890, 892 (Pa. Super. 2012). "To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful

intent." ***Id.*** Nevertheless, "a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." ***Habjan***, 73 A.3d at 637.

"If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven." ***Cunningham v. Cunningham***, 182 A.3d 464, 471 (Pa. Super. 2018). "The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply." ***Id.*** "The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party." ***Id.***

"The imposition of counsel fees can serve as a sanction upon a finding of civil contempt." ***Sutch v. Roxborough Memorial Hospital,*** 142 A.3d 38, 69; ***Rhoades v. Pryce***, 874 A.2d 148, 152 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1124 (Pa. 2006). The purpose of awarding counsel fees in this context is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so it can be coercive and compensatory but it cannot be punitive." ***Sutch***, ***supra*** at 69. We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion. ***Mrozek v. James***, 780 A.2d 670, 674 (Pa. Super. 2001).

Here, the trial court determined Wife willfully violated Paragraph 4's harassment prohibition when Wife sought to advance PFA claims which she already settled via the Stipulation. Wife had argued she was authorized to

pursue a private PFA complaint, because the temporary PFA order was still active after the entry of the Stipulation. The court was not persuaded. Regardless of whether the temporary PFA order was still active when Wife and Wife's Spouse went to the authorities with a private PFA complaint, the allegations concerned Husband's violations that occurred **prior** to the Stipulation. In other words, while the temporary PFA order remained active after the entry of the Stipulation, the purpose of keeping the temporary PFA active was to provide Wife with protection against **future** violations, until such time as Husband consented to the termination of his rights. The court relied on Paragraphs 1-2 of the Stipulation, which provided that "[t]he parties wish to settle all outstanding matters and claims," including the PFA docket. **See** Order (the Stipulation), 1/2/19, at ¶¶1-2; **see also** N.T., at 55-56.

Alternatively, Wife argued she did not actually pursue the private PFA complaint, but that it was Wife's Spouse who, supposedly without her input, pressed the issue with the district attorney's office, and then it was the district attorney who then pursued the matter. The trial court did not find Wife credible:

> And while I have trouble believing that [W]ife had absolutely nothing to do with [Wife's Spouse]'s filing, even if I take that with a grain of salt and accept that, what it ultimately boiled down to was a PFA contempt filed to [Wife's] PFA docket that only she had control over and she sat in this courtroom and testified to it. Clearly if she had told the DA, ["]I'm not pursuing it,["…] they would not have pursued it because their victim would not cooperate. And [Wife] knew [full] well on September 23rd when she was in this court that [Husband's] contempt petition was pending because it was

- 11 -

filed on September 11th. So she was put on notice that [Husband] believed that it was a violation and it was still [being] pursued.

N.T., at 56-57 (footnote added).

The court also noted the timing of the PFA contempt complaint appeared to be "very disingenuous," because it occurred immediately before and after the termination of Husband's parental rights. *Id.* at 55-56. Around this time, the parties were to coordinate final visitations between Husband and the children.

On appeal, Wife merely attempts to relitigate the same arguments she made to the trial court. Throughout her Brief, she argues: as a protected party, she was entitled to enforce an active PFA order; that the trial court misinterpreted the Stipulation's declaration that it settled the PFA docket; that her pursuit of the PFA complaint did not constitute willful harassment; and failing this, that she actually had little to do with the private PFA complaint.[5]

Wife repeatedly asserts the victimization of PFA petitioners as a defense to her actions. But Wife never invoked these protections prior to the Stipulation, nor did she invoke these protections for any conduct which transpired after the entry of the Stipulation. Thus, we agree with the trial court's decision that Wife harassed Husband when she sought to hold him in contempt for violations that occurred months prior to the entry of the Stipulation.

---

[5] We must proceed without Husband's position, as we ordered his Brief stricken for noncompliance with our briefing procedure.

We also agree with the trial court that the Stipulation's terms were clear. The parties meant to settle the PFA docket up to that moment, including all previous allegations and potential violations, which occurred prior to the Stipulation's entry on January 2, 2019. Per the Stipulation, Wife agreed, "after [a] lengthy discussion" between counsel and the parties, "to settle all outstanding matters and claims" relating to the PFA docket; Wife promised to withdraw "with prejudice with respect to any of the factual allegations contained in the PFA petition…." **See** Stipulation, at ¶¶ 1-4. Despite believing Husband's text message violated the temporary PFA order in March 2018, Wife did not raise the matter during the ten months leading up to the entry of the Stipulation. This was an outstanding claim at the time of the Stipulation, and thus settled by the same.

Contrary to Wife's argument otherwise, we agree with the trial court's determination that Wife acted "with volition" and with "wrongful intent" when she violated Paragraph 4's prohibition against harassment. **See MacDougall**, 49 A.3d at 892. First, Wife never pursued a PFA contempt complaint based on Husband's text before the Stipulation. Then, she then agreed "to settle all **outstanding** matters and claims." Wife tried to use the shield of the temporary PFA order as a sword when she sought to punish Husband for his past actions, just as the date of the termination and adoption neared. Even after the district attorney's office originally declined to bring a complaint – and even after the termination of Husband's rights – Wife and Wife's Spouse asked the trial court to review the DA's decision. We agree with the trial court's

reasoning; even assuming Wife was not the driving force behind the PFA contempt complaint, Wife was in the position to inform her Spouse, the district attorney's office, and the trial court, that the Stipulation had already settled all prior PFA issues. As the trial court observed, Wife's Spouse and the authorities acted on her behalf, as she was the only protected party in the PFA matter.

Significantly, we cannot gloss over the trial court's credibility determination that Wife played a role in her Spouse's efforts to bring Husband's PFA violation to the attention of the authorities. Wife claimed she had absolutely nothing to do with the campaign against Husband, but the trial court determined otherwise. Indeed, the timeline of events coincides with Wife's efforts to prevent Husband from enjoying his final visits with the children.

In sum, we place great reliance on a trial court's discretion in contempt. *See Thomas*, 194 A.3d at 225. When doing so here, we conclude the court did not err or abuse its discretion when it found Wife in contempt for willfully violating Paragraph 4's prohibition against harassment. *See MacDougall*, *supra*. The trial court's award of Husband's attorney's fees was a proper, compensatory sanction. *See Sutch*, *supra* at 69.

Lastly, we turn to Wife's contention that the trial court demonstrated bias. We review challenges to a court's impartiality for an abuse of discretion. *Lewis v. Lewis*, 234 A.3d 706, 722 (Pa. Super. 2020).

> The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as the actual presence of bias or prejudice. However, simply because a judge rules against a party does not establish bias on the part of the judge against that party. Along the same lines, a judge's remark made during a hearing in exasperation at a party may be characterized as intemperate, but that remark alone does not establish bias or partiality.

*Id.* (Citations and brackets omitted).

In practice, "[d]iscretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000).

Wife's only allegations of bias were the court's determination that her testimony was not credible, and its decision to award attorney fees. Both of these decisions were squarely in the trial court's purview. Wife points to no specifics in her accusation of prejudice. Thus, we conclude the accusations are baseless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/31/2021

- 15 -