2018 PA Super 224

| | | |
|---|---|---|
| VICTORIA C. THOMAS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES W. THOMAS | : | |
| | : | |
| Appellant | : | No. 1139 EDA 2017 |

Appeal from the Order Entered March 2, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2010-33188

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

OPINION BY GANTMAN, P.J.:                    **FILED AUGUST 07, 2018**

Appellant, James W. Thomas ("Husband"), appeals from the order entered in the Montgomery County Court of Common Pleas, which found Husband in civil contempt of the court's September 16, 2016 order and imposed sanctions in the form of counsel fees in favor of Appellee, Victoria C. Thomas ("Wife").  We affirm.

The trial court opinion sets forth the relevant facts and procedural history of this case as follows:

BACKGROUND AND PROCEDURAL HISTORY

The parties were formally married.  They have two (2) minor children.  The parties were divorced pursuant to a Divorce Decree dated January 11, 2016.  The Divorce Decree incorporated a settlement agreement ("PSA") that was placed on the record before Equitable Distribution Master Bruce Goldenberg on December 17, 2015.

Pursuant to the PSA, [Husband] agreed to transfer assets

_____
*   Retired Senior Judge assigned to the Superior Court.

totaling $575,000 to [Wife]. The $575,000 was to be distributed to [Wife] as follows: (1) $50,000 in accounts or assets that [Wife] had received as of the date of the PSA on December 17, 2015; (2) one-half of [Husband's] TD IRA account in the amount of $101,000; (3) one-half of [Husband's] TIAA-CREF account in the amount of $35,000; (4) three-fourths of the parties' joint TD stock account in the amount of $270,000; and (5) remaining $119,000 payment.

On July 21, 2016, [Wife] filed an Emergency Petition for Contempt of Court and to Enforce Property Settlement Agreement ("Petition"). In this Petition, [Wife] alleged, *inter alia*, that [Husband] had failed to effectuate transfer of the amounts due to her pursuant to the terms of the PSA.

\* \* \*

On September 13, 2016, [Husband] filed an Answer to [Wife's] Petition as well as a Counterclaim. [Husband] contended that, *inter alia*, he had made all the transfers that were required pursuant to the PSA.

On September 15, 2016, [the court] conducted a hearing regarding, *inter alia*, the following: (1) [Wife's] Emergency Petition for Contempt of Court and to Enforce Property Settlement Agreement and (2) [Husband's] Answer and Counterclaim.

From the evidence presented on September 15, 2016, [the court] determined that of the $575,000 that [Husband] was required to pay [Wife] pursuant to the PSA, [Wife] had received the following: (1) $100,000.00 cash, (2) $101,000.00 which represents one-half of [Husband's] TD IRA account, and (3) $273,422.57, which represents 100% of the value of the parties' joint TD stock account.[1] The total amount received by [Wife] from these three (3) sources is $474,422.57.

[1] ***See*** N.T., 9/15/16, Exhibit XW-3. The parties stipulated that [Wife] received this amount from the parties' joint TD stock account.

At the time of the hearing on September 15, 2016, the

parties had yet to finalize a QDRO with respect to [Husband's] TIAA-CREF account. It is anticipated that one-half of this account will be approximately $35,000 to $37,000. (N.T., 9/15/16, pp. 38, 81).

We issued an Order dated September 16, 2016,[1] that directed [Husband] to pay to [Wife] cash in the amount of $62,000 within 30 days of the date of the Order. That would leave a balance of $38,577.43 to be paid to [Wife] from [Husband's] TIAA-CREF account via a QDRO. If one-half of the TIAA-CREF account is more than $38,577.43, then we directed [Wife] to pay the balance to [Husband] within 30 days. Conversely, if one-half of the TIAA-CREF account is less than $38,577.43, then we directed [Husband] to pay the difference to [Wife] within 30 days so that [Wife] is paid a total of $575,000 as stated in the PSA.

On October 19, 2016, [Husband] filed an appeal from our Order dated September 16, 2016. **See** [No.]3320 EDA 2016. Pursuant to Pa.R.A.P. 1925(a), we issued our Opinion (dated December 14, 2016) in support of our Order dated September 16, 2016. By Order filed on April 28, 2017, the Superior Court dismissed that appeal because [Husband] had failed to file an appellate brief by April 19, 2017.

[Meanwhile, on] November 23, 2016, [Wife] filed an Emergency Petition for Contempt and to Enforce the PSA. In this Emergency Petition, [Wife] alleged, *inter alia*, that [Husband] was in contempt of the Order dated September 16, 2016, because he failed to pay her the $62,000 cash payment that was set forth in that Order.

On December 2, 2016, [Wife] filed a Petition for Special Relief in which she requested the [c]ourt to permit each party to claim one child as a tax exemption on their respective tax returns.[2]

> [2] During the hearing on February 23, 2017, the parties stipulated that each party would claim one child as a tax exemption. (N.T., 2/23/17, p. 112).

---

[1] The trial court's order was dated September 16, 2016, but was not docketed and sent until September 19, 2016.

On January 13, 2017, [Husband] filed an Answer and Counterclaim. On January 23, 2017, [Husband] filed an Addendum to the Counterclaim he had filed on January 13, 2017.

On February 23, 2017, we conducted a hearing regarding: (1) [the] 11/23/16 Emergency Petition for Contempt and to Enforce the PSA filed by [Wife], (2) [the] 12/2/16 Petition for Special Relief filed by [Wife], (3) [the] 1/13/17 Answer and Counterclaim filed by [Husband], and (4) [the] 1/23/17 Addendum to the Counterclaim filed by [Husband].

At the conclusion of the hearing on February 23, 2017, we found [Husband] in contempt of the Order dated September 16, 2016 because he had failed to pay **ANY** of the $62,000 he was required to pay to [Wife] pursuant to the terms of that Order. We issued an Order dated March 2, 2017 that directed [Husband] to pay $62,000 to [Wife's] counsel, by certified check, bank check, or money order no later than noon on Friday, March 3, 2017. Furthermore, the Order directed [Husband] to pay [Wife's] counsel fees in the amount of $10,000 no later than March 31, 2017.

We received correspondence from [Wife's] counsel, dated March 7, 2017 stating that he had received a cashier's check from [Husband] in the amount of $62,000.00 on the afternoon of March 2, 2017. …

On March 10, 2017, [Husband] filed a Motion for Reconsideration of the Order dated March 2, 2017. By Order dated March 27, 2017, we denied the Motion for Reconsideration.

On March 31, 2017, [Husband] filed the instant appeal.

(Trial Court Opinion, dated May 25, 2017, at 1-5). Procedurally, we add that the trial court did not order Husband to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b), and Husband filed none.

- 4 -

On appeal, Husband raises the following issues for review:

THE [TRIAL] COURT ERRED IN REFUSING TO ALLOW EX-HUSBAND TO DEFEND THE CONTEMPT PETITION FOR UNPAID MONIES DUE EX-WIFE UNDER THEIR PROPERTY SETTLEMENT AGREEMENT, GIVEN THAT:

−EX-WIFE SHOULD HAVE BEEN ESTOPPED FROM SEEKING EQUITABLE RELIEF FOR "UNCLEAN HANDS" BECAUSE SHE FALSELY TESTIFIED TO THE COURT AT AN EARLIER HEARING ABOUT THE AMOUNT OF MONIES SHE HAD ALREADY RECEIVED FROM EX-HUSBAND, RESULTING IN AN OVERPAYMENT OF OVER $25,000;

−THE COURT WAS TAINTED AGAINST EX-HUSBAND BY FORMER COUNSEL'S IMPERMISSIBLE USE OF A PRIVILEGED E-MAIL GIVING THE IMPRESSION EX-HUSBAND WAS AT FAULT FOR THE DELAY IN ORIGINALLY PAYING EX-WIFE;

−THE COURT PERMITTED FORMER COUNSEL TO UNILATERALLY STIPULATE TO AN INCORRECT AMOUNT EX-HUSBAND HAD PAID EX-WIFE, REFUSING TO ALLOW EX-HUSBAND TO OBJECT TO THE STIPULATION AND BINDING HIM TO THE STIPULATION WITHOUT HIS CONSENT; AND

−THE COURT'S RULING THAT THE AGREEMENT BY EX-HUSBAND'S THEN-COUNSEL TO ACCEPT A STOCK TRANSFER VALUE—EVEN IF INCORRECT—ABSOLVED EX-WIFE OF ANY "UNCLEAN HANDS" ALLOWS EX-WIFE TO PROFIT FROM HER DECEIT AND OFFENDS THE PROPER ADMINISTRATION OF JUSTICE.

THE [TRIAL] COURT [ERRED] IN ASSESSING A $10,000 CONTEMPT SANCTION AGAINST EX-HUSBAND, GIVEN THAT:

−THE SANCTION GIVES EX-WIFE A WINDFALL REWARD FOR GIVING FALSE TESTIMONY AND DECEIVING THE COURT; AND

−THE SANCTION IS GROSSLY EXCESSIVE AND

PUNITIVE FOR A SIMPLE "FAILURE TO PAY" CONTEMPT SANCTION.

(Husband's Brief at 3-4).

In his issues combined, Husband first argues Wife falsely testified at the September 2016 hearing and knowingly provided an incorrect value of the parties' joint TD stock account. Husband contends Wife obtained a windfall in the amount of $25,000.00 as a result of her inaccurate testimony. Husband avers Wife's "unclean hands" served as a valid defense to her contempt petition. Husband submits the trial court erred in refusing to consider Wife's misrepresentations at both the September 2016 hearing and the February 2017 contempt hearing. Husband claims Wife's deceitful conduct during the September 2016 hearing should have precluded her second petition for contempt, this time to enforce the September 2016 order, plus sanctions.

Next, Husband asserts that at the September 2016 hearing, his counsel unilaterally stipulated to Wife's incorrect valuation of the joint TD stock account, and duped the court into accepting that value. Husband contends his counsel's unauthorized stipulation at the September 2016 hearing should not defeat his claim of Wife's "unclean hands," absolve Wife of her "unclean hands," or allow her to profit from her deceit, which offends the proper administration of justice.

Husband also complains the court's award of counsel fees was excessive and unwarranted. Specifically, Husband avers the drafting and modification of a contempt petition is not a complex legal matter, and the sanction of

$10,000.00 for counsel fees was inappropriate. Husband relies on **Sutch v. Roxborough Memorial Hospital**, 142 A.3d. 38 (Pa.Super. 2016), *appeal denied*, ___ Pa. ___, 163 A.3d 399 (2016), to support his contention that the amount of attorney's fees awarded was arbitrary, gratuitous, and punitive under the circumstances.

Further, Husband insists the trial court's dislike for and bias against him played a substantial role in the amount of harsh sanctions imposed. For these reasons, Husband concludes this Court should vacate the trial court's contempt order and remand the matter for a new contempt hearing, where he can present evidence of Wife's "unclean hands." We disagree.

On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion. **Garr v. Peters**, 773 A.2d 183, 189 (Pa.Super. 2001). "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." **Harcar v. Harcar**, 982 A.2d 1230, 1234 (Pa.Super. 2009). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." **Habjan v. Habjan**, 73 A.3d 630, 637 (Pa.Super. 2013). Absent an error of law or an abuse of discretion, we will not disrupt a finding of civil contempt if the record supports the court's findings. **Mrozek v. James**, 780 A.2d 670, 673 (Pa.Super. 2001).

"In proceedings for civil contempt of court, the general rule is that the

burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012). "To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." *Id.* Nevertheless, "a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Habjan, supra* at 637.

"If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven." *Cunningham v. Cunningham*, 182 A.3d 464, 471 (Pa.Super. 2018). "The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply." *Id.* "The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party." *Id.*

"The imposition of counsel fees can serve as a sanction upon a finding of civil contempt." *Sutch, supra* at 69; *Rhoades v. Pryce*, 874 A.2d 148, 152 (Pa.Super. 2005), *appeal denied*, 899 A.2d 1124 (2006). The purpose of awarding counsel fees in this context is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost

of the contempt hearing, so it can be coercive and compensatory but it cannot be punitive."[2] **Sutch, supra** at 69. We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion. **Mrozek, supra** at 674.

In response to Husband's complaints, the court reasoned as follows:

Discussion

To find one in civil contempt, a complainant must prove by a preponderance of the evidence that the respondent is in noncompliance with a court order. The order must be clear, definite, and specific. To sustain a finding of civil contempt, the complainant must prove that: (1) the contemnor had notice of the specific order or decree which he is alleged to have violated, (2) the act constituting the contemnor's violation was volitional, and (3) the contemnor acted with wrongful intent.

In the case before the [court], all three (3) elements set forth in the preceding paragraphs have been satisfied. The Order dated September 16, 2016, which, *inter alia*, directed [Husband] to pay to [Wife] $62,000 cash within 30 days of the date of the Order was clear, definite, and specific.

[Husband] had notice of the Order dated September 16, 2016. We provided a copy of the Order to [Husband] as well as his former counsel. [Wife] demonstrated that [Husband's] failure to pay her the $62,000 in cash was volitional, and [Husband] had acted with wrongful intent.

It is clear that [Husband] had the means to pay the $62,000 in cash to [Wife]. He testified [at the February 2017

_____

[2] An award of attorney's fees as a sanction in a civil contempt case is "separate and apart from the statutory provision for [attorney's] fees under 42 Pa.C.S.A. § 2503(7)." **Sutch, supra** at 68-70 (distinguishing award of counsel fees as sanction for civil contempt from award of counsel fees under statute, where statutory award requires specific finding of dilatory, obdurate or vexatious conduct).

hearing] that he could sell stock or borrow money. In fact, when [Husband] learned that he may be imprisoned due to his contempt of the Court Order, he paid the $62,000 on March 2, 2017.

[Husband's] contempt of the Order dated September 16, 2016 is particularly egregious because he did not make a good-faith effort to pay **ANY** of the $62,000 in cash to [Wife] within 30 days of that Order.

\* \* \*

The [court] reviewed [Wife's] certification of counsel fees and determined that an award of $10,000.00 was appropriate and reasonable given the nature of the work performed and the length of time spent to prosecute the contempt allegations.

(Trial Court Opinion at 5-6). The record supports the court's decision to hold Husband in contempt of the court's September 2016 order. *See Mrozek, supra*.

With respect to Husband's arguments related to the September 15, 2016 hearing, *e.g.*, his argument regarding Wife's testimony at the September 2016 hearing, counsel's alleged unauthorized stipulation at that hearing on the value of the joint TD stock account, and the court's purported bias against Husband, as allegedly illustrated by the court's preclusion of evidence at that hearing, these claims are not properly before us now. Husband filed an appeal from the September 2016 order, but he did not pursue the appeal with diligence, which caused this Court to dismiss his appeal for his failure to file an appellate brief. As a result, Husband squandered his right to obtain appellate review of these claims.

Further, in the contempt proceedings of February 23, 2017, Wife established (1) Husband had notice of the September 15, 2016 order that Husband disobeyed and the order was specific and directed Husband to pay Wife $62,000.00 by a date certain, which Husband did not do; (2) Husband had the ability to pay and chose not to pay; and (3) Husband deliberately and willfully disobeyed the court's order, so as to deny Wife any of the additional funds. **See MacDougall, supra**. Thus, Wife's evidence was more than just a "mere showing of noncompliance." **See Habjan, supra**. Therefore, we reject Husband's current efforts to resurrect his lost claims as "defenses" and "counterclaims" to Wife's contempt petition, because they are invalid justifications in the current proceedings.

Regarding Husband's distress over the amount of counsel fees awarded to Wife as a sanction for Husband's contempt of the September 15, 2016 order, Husband's reliance on **Sutch** is misplaced. In **Sutch**, the sanction imposed totaled over one million dollars in attorney's fees allegedly incurred in a standard medical malpractice contingency fee case. On appeal, we reversed the award of counsel fees because the record showed the difficulties inherent in the underlying medical malpractice case, and the hourly fees associated with the high number of lawyers who allegedly touched the file, were embellished without record basis, in a case that carried no novel question of law or fact to support the extensive charges. **See Sutch, supra** at 79.

Here, however, the court reviewed Wife's certification of counsel fees

sustained as a result of Husband's contempt of the court's September 2016 order. Based on the detailed accounting offered, the court awarded Wife's counsel about ninety percent of the fees associated with prosecuting her contempt petition, which was a reasonable reflection of counsel's related tasks and hourly billing rate. The record reveals that, as respondent in the contempt proceedings, Husband incurred comparable fees, given his counsel's related tasks and hourly billing rate. The record shows no abuse of discretion in the amount of counsel fees awarded to Wife. Thus, Husband's sanctions claim merits no relief.

Finally, we address Husband's complaint about the parties' September 2016 stipulation for the removal of Husband's personal and patient-related data from Wife's laptop computer and their daughter's cell phone. The stipulation was based on Husband's bald allegation that Wife had transferred his personal/patient files from their joint laptop to a second laptop she had purchased after the divorce proceedings. Specifically, the parties' stipulation provided Wife would deliver her laptop computer and her daughter's cell phone to Springboard Media ("Springboard"), who would then wipe Husband's information from these devices. Per the September 2016 stipulation, Springboard would separate Wife's personal data from Husband's personal/patient-related data, and return a drive to Husband that contained his information.

Wife testified at the February 2017 hearing that, while she was unsure

whether Husband's information was actually on her personal laptop and cell phone, she complied with the stipulation and turned over the devices to Springboard for service. At the February 2017 contempt hearing, however, Springboard owner Everett Katzen testified that his company was digitally incapable of performing this task and took no further steps to service Wife's computer as contemplated in the September 2016 stipulation.

Here, Husband did not identify his computer-records claim separately on appeal. In just one sentence in the conclusion paragraph of Husband's appellate brief, he states: "[Given] that the computer stipulation [Wife's] counsel formulated and [Husband] was forced to sign upon threat of losing his HIPPA protected data has not and cannot be implemented, [Wife] herself remains in contempt of the original divorce decree for not returning the computer and other electronic data as she was required to return, including the additional copies of the data she improperly made." (**See** Appellant's Brief at 23).

That sentence is the sum and substance of Husband's particular claim. Absent more, we cannot intuit if Husband is complaining about the content of the stipulation or about Wife's alleged failure to comply with the stipulation or about Springboard's inability to provide the service intended in the stipulation. To the extent Husband is complaining about the content of the stipulation, this issue is waived because he failed to pursue that claim on his appeal from the September 2016 order. To the extent Husband is complaining about Wife's

failure to comply with the stipulation, the record makes clear that she did comply by bringing the laptop and cell phone to Springboard for service. Finally, to the extent Husband is complaining about Springboard's inability to provide the service as stipulated, Husband is the party who insisted on using Springboard and failed to offer any workable alternatives. Therefore, as presented, Husband's computer data claim did not serve as a valid defense to Wife's contempt petition.

Moreover, we decline to grant Husband any specific relief in this regard at this time because he did not properly preserve the claim for appellate review. **See Butler v. Illes**, 747 A.2d 943 (Pa.Super. 2000) (stating when appellant fails to raise or develop his issue on appeal properly, or where his brief is wholly inadequate to present specific issue for review, this Court can decline to address merit of appellant's claim). **See also In re Estate of Whitley**, 50 A.3d 203, 206-07 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating general rule that failure to cite relevant supporting legal authority constitutes waiver of claim on appeal); **Estate of Haiko v. McGinley**, 799 A.2d 155 (Pa.Super. 2002) (stating appellant must support each issue raised by discussion and analysis of pertinent authority; without reasoned discussion of law in appellate brief, appellant hampers this Court's review and risks waiver; "It is not this Court's function or duty to become an advocate for the appellant"). This Court is willing to construe materials of a *pro se* litigant liberally, but his *pro se* status confers no special

benefit upon Husband. **See Wilkins v. Marsico,** 903 A.2d 1281, 1284-85 (Pa.Super. 2006), *appeal denied*, 591 Pa. 704, 918 A.2d 747 (2007) (stating: "To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing"). Thus, Husband waived his computer-data claim on appeal. Husband will have to chart another course to enforce and/or modify the stipulation to obtain his purported files.

Based upon the foregoing, we hold the trial court properly found Husband in civil contempt of the court's September 16, 2016 order and imposed sanctions in the form of counsel fees in favor of Wife. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/18