J-A23006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| S.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.H. & B.H. | : | No. 772 MDA 2023 |
| | : | |

Appeal from the Order Entered May 11, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2021-FC-001007-03

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: JANUARY 3, 2024**

S.P. (Mother) appeals, *pro se*, from the order, entered in the Court of

Common Pleas of York County, finding her in civil contempt for violating prior

custody orders and imposing sanctions.  After our review, we affirm on the

opinion authored by the Honorable N. Christopher Menges.

The extensive procedural history of this matter is set forth in Judge

Menges' opinion and will not be repeated herein. **See** Trial Court

Memorandum Opinion, 6/21/23, at 1-9.  In short, Mother and K.H (Father)

have been involved in custody proceedings since 2018.  The original custody

order, entered on January 23, 2019, granted Mother and Father shared legal

and physical custody of A.E.P. (born December 2013) and R.J.H. (born April

_____

[*] Former Justice specially assigned to the Superior Court.

2015) (collectively, Children).[1]  Father was subsequently charged with sexual offenses,[2] prompting Mother to file a petition to modify custody, seeking sole legal and physical custody of Children.  Paternal Grandfather[3] filed a petition to intervene seeking visitation with Children.[4]

On April 11, 2022, the first day of the custody trial, the trial court issued a temporary custody order[5] granting Mother sole legal and physical custody of Children and permitting Grandfather to have phone calls with Children at least three times a month, as well as partial physical custody once a month for ten hours.  On June 3, 2022,[6] the court entered an order granting Mother sole legal and physical custody, and granting Grandfather phone calls with

_____

[1] Although Father is the biological father of R.J.H, he is not the biological father of A.E.P.

[2] Father pleaded no contest to various sexual offenses and was sentenced to a term of 4½ to 10 years' incarceration.

[3] Grandfather is the biological grandfather of R.J.H., but not A.E.P.

[4] On May 12, 2021, Mother filed a petition seeking a temporary protection from abuse (PFA) order, to protect Mother and Children, alleging Father "seems to be escalating in terms of violence toward the kids and . . . [that Father] has multiple charges of endangering children, child pornography, and sexual assault against other minors."  Petition for Temporary Protection Order, 5/12/21, at 1.

[5] The order also granted Father phone contact, via Zoom, with R.J.H. for 30 minutes once a week and also authorized him to write letters to R.J.H.  **See** Order, 4/11/22, at 3.

[6] Although the custody trial was held on June 2, 2022, the order was received by the York County Prothonotary and entered on the docket on June 3, 2022. **See** Pa.R.C.P. 236.

Children on the first, third, and fifth Monday of every month at 6 PM, and partial physical custody on the second and fourth Saturdays of every month from 9 AM to 7 PM. The court ordered all parties to sign up for the "Our Family Wizard" app, a platform where families can communicate and share information, including schedules, expenses, and messages. Finally, the court ordered Mother to provide Father and Grandfather access to the Children's school portal for information and records.

On September 6, 2022, the court held a review hearing, after which it confirmed its June 3, 2022 order[7] and included the following additional provisions requiring Mother to: put Children's schedule on Our Family Wizard; provide Grandfather the password to Children's school portal; and sign releases so that Grandfather could speak to Children's therapists.

On April 10, 2023, Grandfather filed a contempt petition alleging Mother had violated the court's prior custody orders by

> refusing to comply with the phone call provisions outlined in the [o]rders[, . . .] speaking ill and derogator[ily] about Grandfather in front of [C]hildren[,] . . . refusing to communicate or furnish records to Grandfather about [C]hildren[,] including but not limited to school reports, conferences, pictures, mental health, and counseling[,] . . . not informing Grandfather of parent[-]teacher conferences for [C]hildren[,] and refus[ing] to allow Grandfather to order school pictures of [C]hildren."[8]

---

[7] At the hearing, the court scheduled a second review hearing given Mother's lack of compliance.

[8] That same day, Mother filed a recusal motion, which the court denied.

*See* Contempt Petition, 4/10/23, at 2-3. The court held a status/contempt hearing on May 9, 2023, where Grandfather testified; Mother, who was *pro se*, failed to testify, and also offered no witnesses or other evidence on her behalf at the contempt hearing.[9]

On May 11, 2023, the court entered an order finding Mother in contempt for the following reasons:

(1) Failing to have Children make phone contact with Grandfather regularly as set forth in court order;

(2) Failing to provide medical, educational, and other records for the Children to Grandfather;

(3) Failing to reimburse Grandfather $150.00 for half of the cost of the OurFamilyWizard app; and

(4) Failing to participate in OurFamilyWizard "in a meaningful way."

Contempt Order, 5/11/23, at 2. The court also ordered that: (1) Grandfather was entitled to additional custodial time on Saturday, June 17, 2023, from 9AM to 7 PM, representing "make-up time" for the failure to have his court-ordered phone calls with Children; (2) Mother buy Children a non-smart cell phone, at her own expense and within 20 days, so Children may call Grandfather whenever they wish and vice versa; (3) Mother continue to pay the monthly fee for Children's cell phone; (4) Mother, at the very least, provide Grandfather with school portals, passwords, etc., so he may access Children's

_____

[9] At the beginning of the hearing, Mother requested a continuance so she could seek new counsel, which the court denied. Although Mother declined to testify or call any witnesses in her own defense at the hearing, she did, in fact, cross-examine Grandfather at the hearing.

school information; and (5) Mother reimburse Grandfather $750.00 in attorneys' fees within 120 days. *Id.* at 2-4. Finally, the court reiterated that all provisions in the court's prior custody orders (dated April 7, 2022, June 3, 2022, and September 6, 2022) remained "in full force and effect and Mother is to obey those." *Id.* at 4.

Mother timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[10] She raises the following issues for our review:

(1) Whether the trial court erred or abused its discretion in its finding of contempt.

(2) Whether the trial court adequately weighed the applicable evidence provided on the record in the hearings held on April 7, 2022, June [3], 2022, September 6, 2022, and May 9, 2023.

(3) Whether the trial court sufficiently stated its rationale for its finding of contempt.

(4) Whether the trial court erred or abused its discretion by entering sanctions not requested prior.

(5) Whether the trial court erred or abused its discretion in determining sanctions.

(6) Whether the trial court has shown bias or ill will in its decision-making.

Brief of Appellant, at 4.

---

[10] On October 5, 2022, Mother filed a notice of appeal challenging the court's September 6, 2022 order that was issued following a custody review hearing. However, our Court quashed that appeal concluding that the order was not final or otherwise appealable. *See Pickett v. Hexter, et al*, 1417 MDA 2022 (Pa. Super. filed March 8, 2023) (unpublished memorandum decision).

A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. **See** 23 Pa.C.S.A. § 5323(g). **See also Wood v. Geisenhemer-Shaulis**, 827 A.2d 1204, 1207 (Pa. Super. 2003) ("With respect to civil contempt, 'it is axiomatic that courts have always possessed the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders.'") (citation omitted).

An appellate court's standard of review concerning a trial court's contempt findings is very narrow:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

**Gross v. Mintz**, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted). Finally, "we defer to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as the court had the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d 1230, 1236 (Pa. Super. 2009).

To obtain a finding of civil contempt,[11] a complainant must prove by a preponderance of the evidence that the respondent failed to comply with a definite, clear, and specific" court order. **Thomas v. Thomas**, 194 A.3d 220, 226 (Pa. Super. 2018); **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). Specifically, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Gross**, **supra** at 489 (citation omitted). A court may enforce compliance with its order "for the benefit of the party in whose favor the order runs but not to inflict punishment." **Id.**

After a review of the parties' briefs, the relevant case law, and the certified record on appeal, we can find no abuse of discretion with the trial court's decision to hold Mother in contempt for failing to comply with prior custody orders that were clear, definite, and specific and of which Mother had notice. **Thomas**, **supra**; **Stahl**, **supra**; **Gross**, **supra**. The court's contempt

---

[11] Contempt may be either civil or criminal. The difference between the two is based on the judicial response "to [the] contumacious behavior." **Garr v. Peters**, 773 A.2d 183, 190 (Pa. Super. 2001) (citation omitted). "A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order." **Id.** at 191. However, if "the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal." **Id.** at 191 (citation omitted).

order properly imposed non-punitive sanctions against Mother, which included reimbursing Grandfather $750.00 for his legal fees and adding back lost time to Grandfather's visits due to Mother's intentional, obstructionist actions. **See** 23 Pa.C.S.A. § 5323(g).[12] Notably, the court did not modify or expand any of the parties' pre-existing custodial rights when imposing sanctions. **See J.M. v. K.W.**, 164 A.3d 1260, 1267 (Pa. Super. 2017). Furthermore, the court's factual findings are supported in the record, in large part based on Grandfather's uncontradicted testimony, and we find no error of law. **Harcar**, **supra**; **Gross**, **supra**. We, therefore, rely upon Judge Menges' opinion in affirming the court's contempt order, and instruct the parties to attach a copy of that decision in the event of further proceedings in the matter.

Order affirmed.

---

[12] Pursuant to section 5323(g) of the Domestic Relations Code:

**(g) Contempt for noncompliance with any custody order.**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $ 500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/03/2024

A2306623   Circulated 12/19/2023 11:49 AM

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA FAMILY DIVISION

| | | |
|---|---|---|
| S P , Plaintiff | : | No.: 2021-FC-001007-03 |
| vs. | : | |
| K HL R, Defendant | : | ACTION IN CUSTODY |
| vs. | : | |
| B HL Intervenor | : | |

OFFICE OF PROTHONOTARY
2023 JUN 21 AM 11: 02
JUDICIAL CENTER YORK PA

### MEMORANDUM OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a)(2)(ii) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

**AND NOW**, this 21st day of June, 2023, the Court is in receipt of Plaintiff's Notice of Appeal and Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(b) filed on May 22, 2023. The Court hereby affirms its order entered on May 9, 2023.

### FACTUAL AND PROCEDURAL HISTORY

On March 8, 2023, the Pennsylvania Superior Court issued an opinion regarding an appeal filed by Mother, S P , and summarized the relevant factual and procedural history between the parties as follows:

Mother and K H ("Father")[] have been involved in custody proceedings since 2018. Pursuant to a January 23, 2019 custody

1

order, Mother and Father had shared legal and physical custody of Children until Father was charged with sexually based offenses, prompting Mother to file a Petition to Modify Custody, requesting sole legal and physical custody, and Paternal Grandfather to file a Petition to Intervene, requesting visitation. The court scheduled a custody trial. During this time, Father pleaded no contest and was subsequently sentenced to a term of 4½ to 10 years' incarceration.

On April 11, 2022, after the first day of the ongoing custody trial, the trial court issued a Temporary Order of Custody granting Mother sole legal and physical custody of Children and Paternal Grandfather phone calls at least three times per month and partial physical custody of Children one Saturday per month.

On June 3, 2022, after completion of the custody trial, the trial court confirmed Mother's sole legal and physical custody and increased Paternal Grandfather's partial physical custody to two Saturdays per month with phone contact every other Monday at 6:00 PM. In addition, the court ordered all parties to sign up for the Our Family Wizard computer program to communicate and ordered Mother to provide Father and Paternal Grandfather access to Children's school portal for information and records. The trial court scheduled a two-month review hearing to ascertain progress and "ensure things are going well." Order, 6/3/22.

On September 7, 2022, after a review hearing, the trial court confirmed the June 2, 2022 order. Additionally, the court ordered Mother to put Children's schedule including activities, medical appointments, and therapy appointments on Our Family Wizard, provide the school portal passcode to Paternal Grandfather, and sign releases so that Paternal Grandfather could speak to Children's therapist. The order scheduled another hearing for December 13, 2022.

*P.* *v. H* 2023 LEXIS 556 *1-3 (Pa. Super. Mar. 8, 2023).

At the review hearing on September 6, 2023, given Mother's lack of compliance, the Court scheduled a second review hearing.

Finally, the Court schedules a second review hearing. The second review hearing will be December 13th, 2022, at 10:00 a.m. in Courtroom 6005. The purpose of this review hearing will be:

> 1. The Court may give father and/or grandfather joint legal custody if it deems that in the best interest of these children.
>
> Secondarily, the Court may or may not increase grandfather's physical custodial rights.
>
> And finally, if father and/or grandfather files a petition for contempt, the hearing on December 13th may also be a contempt hearing.
>
> The Court wants to make it very clear that mother's attitude towards grandfather and his getting information and records of these children has been deplorable. Mother needs to over communicate with grandfather by Our Family Wizard and other means.
>
> \*\*\*
>
> Mother has been cavalier about following the prior Orders of this Court, and the Court hereby admonishes mother and makes it very clear to her that this Court will not allow its Orders to be disobeyed and warns mother most severely that if this disobedience continues and a contempt petition is filed and she is found in contempt, the sanctions could be dire.

Order, Sep. 6, 2022, at 3–4.

On April 10, 2023, Grandfather, Bᵢ    Hₑ    , filed a petition for contempt, citing Mother's alleged violations of the court's orders as follows:

> 4. Mother willfully violated the Orders by refusing to comply with the phone call provisions outlined in the Orders.
>
> 5. Mother has prevented or ended the phone calls while the children are talking with Grandfather. Specifically, Mother prevented on time phone calls on September 24, 2022, October 6, 2022, November 11, 2022, January 30, 2023, February 6, 2023, February 20, 2023, and March 20, 2023. Mother on September 19, 2022, December 5, 2022, November 7, 2022, December 19, 2022, and March 6, 2023 prematurely ended the communication between children and Grandfather. Mother routinely calls

Grandfather vulgar names before hanging up on him during his phone calls with the children.

6. Mother willfully violated the Orders by speaking ill and derogatory about Grandfather in front of the children.

7. Mother routinely interrupts the phone calls between children and Grandfather. During said interruptions, Mother calls Grandfather names such as predator, pedophile, and pervert with the children present.

8. Mother willfully violated the Orders by refusing to communicate or furnish records to Grandfather about the children including but not limited to school reports, conferences, pictures, mental health, and counseling. To this day, Grandfather is without any knowledge whether the children are engaged in counseling to assist the children with their relationship with Defendant, K. He

9. Mother willfully violated the Orders by not informing Grandfather of parent teacher conferences for the children and refused to allow Grandfather to order school pictures of the children.

10. Petitioner believes the Respondent's conduct is willful and intentional and is done for the purpose of alienation of the children from Petitioner and/or to deprive the Petitioner's rights of custody with the parties' children.

11. Petitioner requests that this Court hold Respondent in contempt of the Orders dated April 7, 2022, June 2, 2022 and September 6, 2022 with sanctions to be awarded against her, requiring her to pay Petitioner's counsel fees and costs, pursuant to 23 Pa.C.S. § 5337(j)(4).

12. Petitioner expects to incur attorney fees in the amount of $750.00 for the preparation regarding the filing of this Petition.

Pet. for Finding of Contempt of Custody Orders, 4/10/23, ¶¶ 4-12.

A status and contempt hearing was held on May 9, 2023, at which the court heard testimony on the allegations contained in the contempt petition. Grandfather testified that Mother's compliance with the court's orders had not improved.

THE COURT: Is the situation getting any better or is it just as bad as it was? Let's ask that question.
ATTORNEY HOKE: I think it's just as bad

4

> as it was. In fact, Mother is now [with]holding Grandfather's time altogether. His last visit he was supposed to have [sic] on April 22nd, she did not relinquish the children. Looking back at the Court's prior Orders, going back to even June of last year, this has been an ongoing problem with Mother.

Status & Contempt Hr'g, Tr., 5/9/2023, 10-14.

The court heard testimony regarding various other violations. Grandfather testified regarding never receiving portal passwords or information regarding the childrens' schooling or medical appointmens.

> Okay. Going back to June from the last Order with your phone calls with the children, do you more consistently have contact with them or were they more frequently denied?
> A. With the phone calls?
> Q. Yeah.
> A. Half and half, I would say.
> Q. Okay. Regarding the children's medical status, since the beginning of the school year, we'll say August of last year, has Mother informed you of any doctor's appointments she's taken the children to?
> A. None.
> Q. Has she told you of any dental appointments she's taken the children to?
> A. None.
> ***
>
> Q. Regarding the children's educational status, going back to the beginning of the school year, has Mother provided you copies of any report cards for either of the children?
> A. Nothing. From what I understand, the report cards are done electronically, and she has never given me the access to the school report cards to get their progresses.

5

Q. And in the last Order, Mother was directed to turn over the log-in information for the portal, correct?

A. Correct.

Q. And that never happened?

A. Never happened.

Q. Has she ever told you about upcoming teacher conferences for either child[]?

A. Never.

Q. Back-to-school nights?

A. Never.

Q. School events?

A. Never.

Q. Are the children involved in any other school related or extracurricular activities that you are aware of?

A. Not that I'm aware of.

*Id.*, at 12-14.

Grandfather testified regarding Mother's failure to meaningfully use OurFamilyWizard. Additionally, Grandfather, whom the children call Pop Pop, testified regarding missed visits, missed and interrupted phone calls, and Mother's derogatory comments. *Id.*, at 10-14.

BY ATTORNEY HOKE

Q. Okay. Has there been other occasions where Mother has interrupted your phone calls with the children?

A. A couple of times.

Q. What does she say when she interrupts these phone calls with the children?

A. Told me I'm a pedophile and stuff like that on the phone. Calling me all kinds of different names like that.

THE COURT: In front of the children?

THE WITNESS: I believe the children are

6

in front of her because I was talking to the kids and
she took the phone off of them.

THE COURT: Go ahead.

BY ATTORNEY HOKE:

Q. Thank you. So to follow up on that, have
there been other instances outside of these phone calls
that you're aware of that Mother has made derogatory
comments about you or about Father to the children?

A. I know that the kids have told me how mommy
tells us she doesn't like you, mommy hates you, etc.,
like that. And, in fact, the last time I came to pick
them up, which was the Saturday before Easter, the kids
got into the truck with me and said, when you got here,
mommy was sitting there, and she saw you come up, and
she gave you the finger out the window. That's bad,
isn't it, Pop Pop? I said, that's very bad.

*Id.*, at 10-11.

At the beginning of the hearing, Mother requested a continuance so that she could seek new counsel. *Id.*, at 3. Both Father and Grandfather objected asserting that Mother had plenty of time to secure new counsel. *Id.*, at 4, 6. The request for a continuance was denied and Mother declined to speak without counsel. *Id.*, at 4.

THE COURT: All right. Your request for
a continuance is denied. So we're going to go ahead
and have a hearing.

Attorney Hoke, you ready?

THE MOTHER: Do what you're going to do.

THE COURT: I'm sorry, Ms. P
What did you say?

THE MOTHER: I said, okay, do what you
are going to do. At this point, I'm going to plead the
Fifth. I will not participate. They have not entered
any sort of evidence, which apparently there are
evidentiary requirements when you file something with
the Court, as well as burden of proof, so they have not

7

-- their petition to intervene nor would the petition
for contempt provide any sort of evidence to the Court
to suggest that anything of this nature is actually
happening.

*Id.,* at 6-7.

Despite Mother's decision not to participate, she did cross-examine Grandfather,

but still declined to testify or call any witnesses in her own defense.

> THE COURT: Okay. Ms. P         , do you
> have any witnesses you want to call?
> THE MOTHER: No, Your Honor.
> THE COURT: You don't want to testify?
> THE MOTHER: No, Your Honor.
> THE COURT: You know there is no right
> to not self-incriminate in a civil case.
> THE MOTHER: That's fine. I do not wish
> to testify, Your Honor. Thank you.

*Id.,* at 16.

The court found Mother in contempt based on the testimony before it. The court

provided several sanctions. Given Mother's refusal to follow the court's orders enabling

Grandfather's information about and contact with the children as ordered, the court

sought to enforce its orders by increasing Grandfather's rights. The court stated that it

had raised this possibility in prior orders. *Id.,* at 19. However, Grandfather testified that

he had not yet filed a petition for modification pending the outcome of the contempt

hearing. *Id.,* at 15-16. In addition, the court's review of Pa.C.S. § 5323(g) confirmed that

the court could not expand Grandfather's custodial rights as an enforcement sanction.

Pa.C.S. § 5323(g).

8

In its order of May 9, 2023, the court identified Mother's violations of its orders and issued sanctions, which included payment of Grandfather's attorney's fees in the amount of $750. Mother filed a notice of appeal on May 22, 2023.

## ISSUES ON APPEAL

Plaintiff's Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(b) that provides the following:

1. *Whether the trial court erred or abused its discretion in its finding of contempt.*
2. *Whether the trial court adequately weighed the applicable evidence provided on the record in the hearings held on April 07, 2022, June 02, 2022, September 06, 2022, and May 9, 2023.*
3. *Whether the trial court sufficiently stated its rationale for its finding of contempt.*
4. *Whether the trial court erred or abused its discretion by entering sanctions not requested prior.*
5. *Whether the trial court erred or abused its discretion in determining sanctions.*
6. *Whether the trial court has shown bias or ill will in its decision-making.*

## DISCUSSION

"When considering an appeal from an Order holding a party in contempt for failure to comply with a court Order, [an appellate court's] scope of review is narrow: [the appellate court] will reverse only upon a showing the court abused its discretion.

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted).

> Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellant [sic] court must place great reliance upon the discretion of the trial judge.
> * * *

9

> [T]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.

*Id.*, at 1236 (citation omitted and formatting not altered).

"If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. *Gross v. Mintz*, 284 A.3d 479, 489 (Pa. Super. 2022) (citation omitted and formatting altered).

> To find one in civil contempt, a complainant must prove by a preponderance of the evidence that the respondent is in noncompliance with a court order. The order must be clear, definite, and specific. To sustain a finding of civil contempt, the complainant must prove that: (1) the contemnor had notice of the specific order or decree which he is alleged to have violated, (2) the act constituting the contemnor's violation was volitional, and (3) the contemnor acted with wrongful intent.

*Thomas v. Thomas*, 194 A.3d 220, 226 (Pa. Super. 2018).

"Moreover, a court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt." *Gross v. Mintz*, 284 A.3d, at 489 (citations omitted and formatting altered). However, "a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Thomas v. Thomas*, 194 A.3d at 226. "If the alleged contemnor is unable to perform and has, in good faith, attempted to comply

10

with the court order, then contempt is not proven." *Id.* (citations omitted). "The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply." *Id.*

> *1. Whether the trial court erred or abused its discretion in its finding of contempt.*
> *3. Whether the trial court sufficiently stated its rationale for its finding of contempt.*

The Court will address Plaintiff's first and third issues together because they both relate to the finding of contempt. Mother does not identify what error the court is alleged to have committed or in what way it is alleged to have abused its discretion in finding her in contempt. It is denied that this Court erred as a matter of law and/or abused its discretion in relation to the finding of contempt. Here, the three elements cited above are met. The court's orders of April 7, 2022, June 2, 2022, September 6, 2022, are clear, definite, and specific. Mother had notice of the orders that she is alleged to have disobeyed. The court found that Mother's violations of orders the court entered in her children's best interests were both volitional and with wrongful intent. At the contempt hearing on May 9, 2023, Mother put forward no testimony or defense asserting an inability to perform or of making a good-faith effort to comply with the court's orders. It is not entirely clear why Mother is so resistant to following the court's orders regarding allowing Grandfather to have information and contact with the children. Indeed, at the pre-trial conference on February 8, 2022, Mother's attorney explained that Mother does

11

not have a problem with Grandfather having contact with the children; however, she has a problem with the court-mandated nature of it.

> BY ATTORNEY BODENE
> So my client doesn't have a problem in theory with grandfather having contact with the children. It's the court-ordered time. She in the past has always accommodated his request when he wants to stop by, see the kids, take them out for lunch with her present. She doesn't have a problem with that. It's the court-ordered mandated nature of it that does not match up with the history that is her concern, Your Honor.

Pre-Trial Conf., Tr., 2/8/2022, at 4-5.

At any rate, Mother did not explain her reasons for violating the court's orders at the contempt hearing. The court did not err or abuse its discretion in finding Mother in contempt, and the court's order of May 9, 2023 sufficiently states its rationale for the contempt finding.

> *4. Whether the trial court erred or abused its discretion by entering sanctions not requested prior.*
> *5. Whether the trial court erred or abused its discretion in determining sanctions.*

The Court will address Plaintiff's, fourth and fifth issues together because they both relate to sanctions. It is denied that this Court erred as a matter of law and/or abused its discretion in relation to the issuance of sanctions. The court issued sanctions pursuant 23 Pa.C.S. § 5323(g)[1] to encourage Mother's compliance with its orders. The court

---

[1] The court's May 9, 2023 order contains a typo in the citation to the sanctions statute. The citation should be listed as 23 Pa.C.S. § 5323(g) instead of § 5325(g).

12

required Mother to reimburse Grandfather for attorney's fees in the amount of $750. Order, 5/9/23, at 4. The Child Custody Act permits a court to impose a sanction of "counsel fees and costs" after finding that a party is in contempt of a custody order. 23 Pa.C.S. § 5323(g)(1)(v). "Attorney fees may be assessed as a sanction for the contemnor's refusal to comply with a court Order, causing the innocent party to incur fees" as a result of the contemnor's noncompliance. *Harcar v. Harcar*, 982 A.2d, at 1234. In reviewing a grant of attorney's fees, [an appellate court] will not disturb the decision below absent a clear abuse of discretion." *Goodman v. Goodman*, 556 A.2d 1379, 1391 n.8 (Pa. Super. 1989) Here, the court heard testimony from Grandfather that he had incurred $750 or more in attorney's fees in relation to the contempt action. Tr., 5/9/23, at 14. The court determined that this amount was reasonable. Although the court was not required to consider Mother's ability to pay before granting an award of attorney's fees, the court did assess Mother's income and her ability to pay. *Id.*, at 17-18. Thus, the court did not abuse its discretion in relation to the determination of sanctions.

2. *Whether the trial court adequately weighed the applicable evidence provided on the record in the hearings held on April 07, 2022, June 02, 2022, and September 06, 2022.*

[W]ith regard to issues of credibility and weight of the evidence, [an appellate court] must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. *D.R.L. v. K.L.C.*, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted). The Court asserts that it adequately weighed the evidence provided at the hearings on April 7, 2022,

13

June 2, 2022, September 06, 2022, and May 9, 2023.

As a side note, in March 8, 2023, the Superior Court of Pennsylvania issued an opinion quashing Mother's prior appeal under docket number 1417 MDA 2022, explaining that the order of September 6, 2022 was not a final appealable order because the court contemplated expanding Father's/Grandfather rights.[2] The September 6, 2022 hearing was scheduled as a follow-up or a status review hearing to assess compliance after the court's order after a custody trial on June 2, 2022. At the September 6, 2022 status hearing, the Court issued an ordered that another status hearing would be scheduled on December 13, 2022, which would also contemplate expanding Grandfather's rights. Order, Sep. 6, 2022, at 3.

The Court explained as follows:

BY THE COURT:
Finally, the Court schedules a second review hearing. The second review hearing will be December 13th, 2022, at 10:00 a.m. in Courtroom 6005. The purpose of this review hearing will be:

1. The Court may give father and/or

---

[2] The Superior Court wrote:

After careful review, we conclude that the order at issue here is not a final order. The trial court scheduled the December 13, 2022 hearing to contemplate granting legal custody to Paternal Grandfather and increasing physical custody to Paternal Grandfather. The record indicates that the trial court, thus, has not completed the hearings on the merits and there is not yet a complete resolution of the claims between the parties. Accordingly, despite the trial court's characterization, the September 7, 2022 order is not appealable because it is not a final order, but rather an interlocutory order.

*P. . . v. H . . .* 2023 LEXIS 556, *4-5.

14

> grandfather joint legal custody if it deems that in the best interest of these children.
>
> Secondarily, the Court may or may not increase grandfather's physical custodial rights.
>
> And finally, if father and/or grandfather files a petition for contempt, the hearing on December 13th may also be a contempt hearing.

Order, 9/6/23, at 3.

Due to Mother's first appeal, the December 13, 2022, status hearing that was scheduled to contemplate expanded rights for Grandfather did not occur until May 9, 2023. The May 9, 2023 hearing also contemplated expanding Grandfather's rights, which would suggest that the order is not a final appealable order. However, a petition for contempt was filed, making the hearing also a contempt hearing at which sanctions were issued and for which there was no intervening hearing scheduled prior to the sanctions taking effect. Thus, the court responds to the appeal of the May 9, 2023 order, at least as to the contempt aspect, as though it is from a final appealable order, even though the court also contemplated granting additional custodial rights to Grandfather. Order, 5/9/23, at 1-2.

*6. Whether the trial court has shown bias or ill will in its decision-making.*

Mother's allegation does not identify in what way the court is alleged to have shown bias or ill will in its decision-making. At the contempt hearing appealed from, Mother offered no testimony, witnesses, or evidence in her own behalf. It is simply not clear to the court what bias or ill-will Mother alleges. Therefore, the court denies that it

15

has shown bias or ill-will in its decision-making.

## CONCLUSION

After review of the record and for the foregoing reasons, the Court hereby

reaffirms its order entered on May 9, 2023 that found Mother in civil contempt.

**BY THE COURT,**

N. CHRISTOPHER MENGES, JUDGE

**The Prothonotary is directed to serve notice of the entry of this Opinion as required by law and rule of court.**

16